DISCIPLINARY COUNSEL *v.* JONES.

[Cite as *Disciplinary Counsel v. Jones,*
112 Ohio St.3d 46, 2006-Ohio-6367.]

(No. 2006-1562—Submitted October 17, 2006—Decided December 20, 2006.)

Per Curiam.

{¶ 1} Respondent, David Ross Jones, last known address in Charleston, South Carolina, Attorney Registration No. 0005283, was admitted to the practice of law in Ohio in 1972. Respondent's license to practice has been under suspension since December 2, 2005, for his failure to register as an attorney for the 2005/2007 biennium beginning September 1, 2005. *In re Attorney Registration Suspension,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

{¶ 2} On February 13, 2006, relator, Disciplinary Counsel, charged respondent with two counts of professional misconduct. Respondent was served with the complaint but did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact and conclusions of law and recommending a sanction. The board adopted the master commissioner's findings of fact, conclusions of law, and recommendation.

Misconduct

{¶ 3} Count I charged that respondent had misappropriated large sums of money from a charitable foundation that had been established by a client who is now deceased and that he had thereby violated DR 1–102(A)(3) (prohibiting

illegal conduct involving moral turpitude), 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 9–102(B)(3) (requiring a lawyer to maintain complete records of all client funds in the lawyer's possession and to render appropriate accounts), and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver requested funds in the lawyer's possession that the client is entitled to receive). Count II charged that respondent had violated Gov.Bar R. V(4)(G) by failing to cooperate in the investigation of this misconduct.

*Count I*

{¶ 4} In 1983, Carl H. DeVoe executed a will providing that the residue of his estate be distributed to a revocable trust. DeVoe also executed a revocable trust that provided that any assets remaining in his estate after the distribution of funds to a marital trust and a family trust be distributed to the DeVoe Foundation. Respondent was named trustee of the revocable trust and was designated executor and personal representative of DeVoe's estate.

{¶ 5} The DeVoe Foundation was incorporated in 1983 and organized exclusively to promote the charitable, educational, and scientific purposes of six charities—the American Cancer Society, the Knights Templar Eye Foundation, the American Heart Association, the Kidney Foundation, the Shriners Hospital for Crippled Children, and the Arthritis Foundation. DeVoe, respondent, and another lawyer were members of the foundation and were initially named trustees for the foundation. The board of trustees included the executive directors of the six named charities to which funds were to be disbursed. The DeVoe Foundation's articles of incorporation specified that no one other than the named charities receive distributions from the foundation's net earnings.

{¶ 6} DeVoe died on March 23, 1996. The next month, respondent applied to administer the DeVoe estate in the Cuyahoga County Common Pleas Court, Probate Division. In August 1996, respondent filed an inventory and appraisal, valuing the DeVoe estate at $1,117,550.77.

{¶ 7} In October 1997, respondent sent two checks—a $12,213.19 check representing proceeds from a Paine Webber securities account and a $4,032.34 check representing proceeds from a Merrill Lynch securities account—to the Arthritis Foundation. With each check, respondent enclosed a letter advising that the payment was made in accordance with the DeVoe estate plan. In March 1998, respondent sent a bank draft for $10,000, drawn from an account entitled "David R. Jones, Trustee, Unified Trust Agreement," to the Arthritis Foundation and advised that the disbursement was the charity's distributive share.

{¶ 8} In May 1998, an attorney for the Arthritis Foundation questioned whether respondent had paid all the funds to which the organization was entitled and asked to examine the DeVoe Foundation's financial records. Respondent, who had not called a meeting of the DeVoe Foundation board of trustees since DeVoe's death, did not provide an accounting of the foundation's assets and disbursements.

{¶ 9} In April 1999, respondent sent $10,000 each to the American Cancer Society, the Arthritis Foundation, and the Kidney Foundation by check drawn from the DeVoe Foundation's bank account.

{¶ 10} On October 7, 1999, the Arthritis Foundation filed a complaint in the Cuyahoga County Court of Common Pleas, alleging that respondent had violated the DeVoe Foundation's corporate regulations, breached his fiduciary duties· to the foundation, and refused to produce the foundation's financial records for review. The complaint also requested that the DeVoe Foundation be dissolved and its assets distributed in equal shares to the specified charitable organizations.

{¶ 11} On January 22, 2002, the common pleas court entered a default judgment against respondent, finding that he had breached his fiduciary duties, and removed him as an officer and trustee of the DeVoe Foundation. The court further found respondent personally liable to the specified charitable organizations for what the court determined to be the assets of the DeVoe Foundation—$751,145.10.

{¶ 12} In January 2005, the DeVoe Foundation's bank account was closed pursuant to court order. At that time, the account contained a balance of $519,549.69. The Cuyahoga County Common Pleas Court further ordered that this money be distributed to the charities in accordance with the mission of the DeVoe Foundation.

{¶ 13} The Kidney Foundation also took legal action against respondent in 2004 to recover its share of the DeVoe Foundation assets. The Geauga County Court of Common Pleas entered a default judgment against respondent for $751,145.10. The court found that respondent's assets were subject to execution and enjoined him from transferring any of his assets. The court further found respondent liable for $750,000 in punitive damages, plus attorney fees and costs. The Kidney Foundation and other charities entitled to proceeds from the DeVoe Foundation have since initiated foreclosure proceedings against respondent's property to collect on their judgments.

{¶ 14} In investigating the grievance filed against respondent, relator subpoenaed the bank records for the DeVoe Foundation's checking account. These records indicated that the account had a balance of $672,654.70 as of January 1, 2004. The records also revealed that after his court-ordered removal as officer and trustee, respondent continued to write checks against the DeVoe Founda-

tion's bank account, including seven drafts made out to an organization named 8490 Kinsman, L.L.C.

{¶ 15} In 1997 and 1998, 8490 Kinsman Road, in Russell, Ohio, was apparently the address for respondent's law office. In 1999, respondent established 8490 Kinsman, L.L.C. (the "Kinsman Company") to "pursue any purpose(s) for which individuals may lawfully associate themselves" and to "own, operate, manage and sell the real property known as 8490 Kinsman Road, Russell, Ohio." Respondent served as a member, manager, or representative and as statutory agent for the Kinsman Company. As of January 1, 2004, the Kinsman Company bank account had a balance of $2,551.62. From January 2004 to December 2004, however, deposits totaling $152,570.16 were placed in that account, $135,000 of which could be traced to the seven checks written against the DeVoe Foundation's bank account. During the same period, withdrawals of $147,819.58 were made from the Kinsman Company's bank account, $141,000 of which was disbursed through checks made out to respondent's wife.

{¶ 16} Finding that respondent had misappropriated at least $141,000 of funds that his client had intended to donate to charitable causes, the board found that respondent had violated the Disciplinary Rules as charged in Count I of relator's complaint.

### Count II

{¶ 17} During the investigation of this misconduct, relator initially had difficulty locating respondent but eventually learned that he had moved to South Carolina. Relator advised respondent of the grievance filed against him by certified mail, and on February 25, 2005, he responded. In a one-page, handwritten letter, respondent advised that he had disbursed over $100,000 to charities named in the DeVoe Foundation Articles of Incorporation and that over $500,000 remained in the foundation's bank account. Respondent provided nothing, however, to document these assertions.

{¶ 18} Relator later sent respondent two more letters. The first letter, which respondent received by Federal Express, asked specific questions regarding the DeVoe Foundation funds; the second letter asked for respondent's response to a proposed formal complaint. Respondent did not reply to either letter. The panel and board thus found that respondent had also violated Gov.Bar R. V(4)(G).

### Recommended Sanction

{¶ 19} In recommending a sanction for respondent's misconduct, the master commissioner and board weighed the mitigating and aggravating factors of his case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 20} Adopting the master commissioner's report, the board found no evidence of mitigating circumstances to weigh in favor of lenience. In contrast, the master commissioner and the board found six of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1). Apparently because of respondent's license suspension for failing to register, the board found that respondent had a prior disciplinary record. See BCGD Proc.Reg. 10(B)(1)(a). The board found that respondent had acted dishonestly and for his own profit in misappropriating the DeVoe Foundation funds and that he had done so repeatedly, demonstrating a pattern of misconduct. BCGD Proc.Reg. 10(B)(1)(b) and (c). Respondent had further failed to participate in the disciplinary process and to acknowledge his wrongful conduct. BCGD Proc.Reg. 10(B)(1)(e) and (g). Finally, the board found that respondent had failed to make restitution. BCGD Proc.Reg. 10(B)(1)(i).

{¶ 21} Relator advocated respondent's permanent disbarment. The master commissioner recommended disbarment, citing as doubly distressing the fact that the misappropriated funds were intended for charity. The board adopted the recommendation to disbar.

## Review

{¶ 22} Respondent reprehensibly misappropriated funds intended by his client to serve charitable purposes and then ignored his duty to assist in relator's investigation of the wrongdoing. We therefore agree that he violated DR 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 9–102(B)(3), and 9–102(B)(4), and Gov.Bar R. V(4)(G). The presumptive disciplinary measure for such acts is disbarment. *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16; *Disciplinary Counsel v. Millonig,* 108 Ohio St.3d 154, 2006-Ohio-420, 841 N.E.2d 779, ¶ 14.

{¶ 23} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.