**CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* PARRISH.**

**[Cite as *Cleveland Metro. Bar Assn. v. Parrish,***

**121 Ohio St.3d 610, 2009-Ohio-1969.]**

*Attorneys at law — Misconduct — Multiple violations of the Disciplinary Rules, including engaging in illegal conduct involving moral turpitude — Disbarment.*

(No. 2008-2469 — Submitted February 18, 2009 — Decided May 5, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 06-096.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Justin Peter Parrish of Rocky River, Ohio, Attorney Registration No. 0064246, was admitted to the practice of law in Ohio in 1994. In July 2007, respondent was convicted of felony theft, and his license to practice law has been under suspension since October 23, 2007, pursuant to Gov.Bar R. V(5)(A)(4). See *In re Parrish*, 115 Ohio St.3d 1434, 2007-Ohio-5636, 875 N.E.2d 97.

**{¶ 2}** Relator, Cleveland Metropolitan Bar Association, charged respondent with numerous violations of the Disciplinary Rules in a 12-count amended complaint. A panel appointed by the Board of Commissioners on Grievances and Discipline heard the case, including the parties' extensive stipulations and respondent's testimony, made findings of misconduct, and recommended respondent's permanent disbarment. The board accepted the panel's findings and recommendation. Respondent has not objected to the board's report and recommendation. We accept the recommendation of permanent disbarment.

**Misconduct**

{¶ 3} The amended complaint comprised 12 counts pertaining to respondent's conduct in two matters: (1) the Father Vincent O'Dea trust and (2) the John and Debra Sabo litigation.

*The Father Vincent O'Dea Trust*

{¶ 4} In May 2002, Father Vincent O'Dea hired respondent to represent him in trust and estate matters. Father O'Dea had already established an inter vivos trust to provide funds for certain charitable organizations, and he directed respondent to prepare a power of attorney naming Father James Ragnoni as Father O'Dea's agent. Following Father O'Dea's death in September 2002, Father Ragnoni, acting as trustee, retained respondent as attorney for the estate and the trust. At the time of Father O'Dea's death, the trust contained over $1.3 million.

{¶ 5} On March 5, 2004, Father Ragnoni signed a "Letter of Authority," prepared by respondent, authorizing the establishment of "a trust account in the name of 'The Father Vincent O'Dea Trust Account' * * * list[ing] as signatories [Father Ragnoni] and attorney Parrish." Listing himself as trustee, respondent then opened a new account (titled "Father Vincent O'Dea Trust") into which the existing trust funds were transferred.

{¶ 6} On March 9, 2004, less than one week after receiving signatory authority on the trust account, respondent wrote himself a check for $6,000. This was the first of 15 checks on the account that were signed by and made payable to "J. Peter Parrish," eventually totaling $96,685. Respondent also electronically transferred $50,000 from the Father Vincent O'Dea Trust to his business account in November 2004 and $25,436.85 from the trust to his own attorney trust account in August 2005. Eventually, respondent withdrew more than $172,000, not to pay for legal fees or other work for the trust, but—as he explained—"to maintain [the] illusion" that he "was still a successful sole practitioner."

2

**{¶ 7}** On January 29, 2006, unaware of the misappropriation, Father Ragnoni discharged respondent as trust counsel, replaced him with Joyce Salisbury, and requested return of the file. Respondent, however, did not return the file. Throughout the next month and a half, attorney Salisbury repeatedly asked respondent to return the trust-fund file, to no avail. On March 9, 2006, Salisbury filed a complaint for concealment in probate court. In response, respondent informed Salisbury that he would deliver the file on March 13; Salisbury explained that if he did not, she would file a grievance with relator. Respondent did not return the file on March 13, and Salisbury filed a grievance on March 15. Salisbury eventually determined that at least $172,000 had been misappropriated from the trust.

**{¶ 8}** On July 31, 2007, respondent pleaded guilty to third-degree felony theft, was sentenced to a four-year suspended sentence with a 20-day jail term and was ordered to pay $250,000 in restitution.

**{¶ 9}** During his representation of Father O'Dea and the trust, respondent did not carry professional-liability insurance. He informed neither Father O'Dea nor Father Ragnoni of this fact.

*The John and Debra Sabo Litigation*

**{¶ 10}** In October 2000, John and Debra Sabo hired respondent to defend them in a dispute with a contractor. In May 2001, the contractor filed to foreclose under a mechanic's lien on the Sabos' property, and respondent filed an answer and counterclaim.

**{¶ 11}** As the representation continued, however, respondent neglected the Sabos' case in at least three situations. First, respondent did not respond to the contractor's motion for summary judgment, and default judgment was entered on the validity of the lien. Second, after a motion to compel discovery was granted and the Sabos timely provided discovery responses to respondent, respondent did not provide them to opposing counsel. Finally, after receiving at

least five continuances from May 2005 to April 2006, respondent failed to appear for a June 2006 pretrial conference, and his absence resulted in dismissal of his clients' counterclaim for failure to prosecute. Respondent did not inform the Sabos of his failure to appear or of the dismissal of their counterclaim. In August 2006, the Sabos discharged respondent and retained new counsel, who filed a motion for relief from judgment or reconsideration. The motion was denied.

{¶ 12} During his representation of the Sabos, respondent did not carry professional-liability insurance. He did not inform the Sabos of this fact.

{¶ 13} Based on the parties' stipulations and respondent's testimony at the hearing, the board found clear and convincing evidence that respondent had violated DR 1-102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), 1-104(A) (a lawyer shall inform a client if the lawyer does not maintain professional liability insurance), 2-106(A) (a lawyer shall not charge an illegal or clearly excessive fee), 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him), 7-101(A)(3) (a lawyer shall not intentionally prejudice or damage his client), and 9-102(B)(4) (a lawyer shall promptly pay or deliver funds or property to the client). We accept these findings of misconduct.

**Recommended Sanction**

{¶ 14} In determining the recommended sanction for respondent's misconduct, the panel and board reviewed the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 15} Adopting the panel report and recommendation, the board found four of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1). The

4

board found that respondent had acted with a dishonest or selfish motive in misappropriating over $172,000 from the O'Dea trust and that he had misappropriated funds repeatedly over a 22-month period. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). The board also found that the victims of the misconduct were vulnerable and had been harmed by respondent's misconduct. BCGD Proc.Reg. 10(B)(1)(h).

**{¶ 16}** The board found two factors in mitigation: absence of a prior disciplinary record and a cooperative attitude toward the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). The board rejected respondent's contention that he had acted under a mental disability, see BCGD Proc.Reg. 10(B)(2)(g), and this finding has not been challenged here.

**{¶ 17}** Relator advocated respondent's disbarment. Concluding that "the harm Respondent caused greatly outweighs the mitigation he presented," the board adopted the recommendation to disbar.

### Review

**{¶ 18}** We accept the findings of the board and adopt its recommendation to disbar respondent. To maintain the illusion that he had a successful legal practice, respondent misappropriated over $172,000, money that his client had intended to serve charitable purposes. The thefts began less than a week after securing signatory authority on the trust and continued for almost two years. Respondent harmed other clients through his continued neglect of their case, leading to the entry of a default judgment on an important issue, as well as the dismissal of their counterclaim. In neither case did respondent maintain professional-liability insurance or inform his clients that he did not. The presumptive disciplinary measure for respondent's conduct is disbarment, and this sanction is appropriate here. See, e.g., *Disciplinary Counsel v. Jones*, 112 Ohio St.3d 46, 2006-Ohio-6367, 857 N.E.2d 1221, ¶ 22; *Disciplinary Counsel v. Wherry* (2000), 87 Ohio St.3d 584, 587, 722 N.E.2d 515.

**{¶ 19}** Respondent is therefore permanently disbarred from the practice of law in Ohio.  Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jones Day, John Q. Lewis, and William Warren, for relator.

James Sammon, for respondent.

_____