DISCIPLINARY COUNSEL *v*. WICKERHAM.

[Cite as *Disciplinary Counsel v. Wickerham,*

**132 Ohio St.3d 205, 2012-Ohio-2580.]**

*Attorneys—Misconduct—Multiple violations, including misappropriation from*
*clients and failure to cooperate with disciplinary authority—Permanent*
*disbarment.*

(No. 2011-2032—Submitted January 18, 2012—Decided June 14, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-074.

_____

**Per Curiam**.

{¶ 1}  Respondent, Michelle Wickerham, formerly of West Union, Ohio, Attorney Registration No. 0074984, was admitted to the practice of law in Ohio in 2002.  We suspended her license on an interim basis on April 29, 2011, pursuant to Gov.Bar R. V(5)(A), based upon allegations that she had engaged in conduct that violated the Ohio Rules of Professional Conduct and that she posed a substantial threat of serious harm to the public.  *Disciplinary Counsel v. Wickerham*, 128 Ohio St.3d 1469, 2011-Ohio-2052, 946 N.E.2d 229.  And on November 16, 2011, we suspended her from the practice of law for her failure to register as an attorney for the 2011 to 2013 biennium.  *In re Atty. Registration Suspension of Wickerham*, 130 Ohio St.3d 1441, 2011-Ohio-5890, 957 N.E.2d 302.  Both of these suspensions remain in effect.

{¶ 2}  Based upon findings that Wickerham has failed to answer disciplinary counsel's 30-count complaint and has committed nearly 300 violations of the Rules of Professional Conduct and the Supreme Court Rules for

the Government of the Bar in Ohio, the Board of Commissioners on Grievances and Discipline now recommends that we permanently disbar Wickerham.

{¶ 3} Having thoroughly reviewed the record, we find that relator has proven the allegations in the complaint by clear and convincing evidence. Therefore, we adopt the board's findings of fact and conclusions of law and hereby permanently disbar Wickerham from the practice of law in Ohio.

**Procedural History and Misconduct**

{¶ 4} Relator received the first of numerous grievances in December 2010. An assistant disciplinary counsel spoke with Wickerham on or about January 31, 2011. Wickerham indicated that she was having difficulty dealing with pending custody proceedings involving her children and that she was addicted to prescription drugs. Assistant disciplinary counsel advised Wickerham that relator would like to obtain her client files in order to return them to her clients, informed her that she needed to respond to the grievances filed against her, and suggested that she contact the Ohio Lawyers Assistance Program ("OLAP"). Several days later, relator's investigator retrieved approximately 11 banker's boxes of client files from Wickerham's garage. Relator returned approximately 97 files to clients, but retained approximately 150 files, for clients who could not be located.

{¶ 5} Wickerham acknowledged to assistant disciplinary counsel that she was receiving the grievances sent to her by relator, and relator has submitted documentation that 11 of its certified letters of inquiry were accepted by a Kevin Moler at Wickerham's address. But Wickerham never responded to any of relator's letters of inquiry.

{¶ 6} On August 15, 2011, relator filed a 30-count complaint alleging that, among other things, Wickerham had violated numerous Rules of Professional Conduct and Gov.Bar R. V(4)(G) in her handling of more than 30 client matters.

**{¶ 7}** Unable to obtain service of the complaint on Wickerham at the addresses on file with the Office of Attorney Services or at a North Carolina address she had given to relator's investigator, relator obtained service upon the clerk of this court pursuant to Gov.Bar R. V(11)(B).

**{¶ 8}** Wickerham did not answer the complaint. Consequently, relator moved for default judgment and, in accordance with Gov.Bar R. V(6)(F)(1)(b), submitted 65 sworn or certified exhibits in support of the motion, including affidavits and supporting documents from relator's investigator, assistant disciplinary counsel, the executive director of OLAP, a magistrate, two judges, and 27 of Wickerham's clients.

**{¶ 9}** A master commissioner appointed by the board granted relator's motion for default. The evidence demonstrated that Wickerham violated the Rules of Professional Conduct by accepting retainers from clients and then failing to both reasonably communicate with those clients and honor the numerous promises she had made to them. She performed few, if any, of the services she had agreed to provide and failed to withdraw from representation when her physical or mental condition, purportedly caused by her addiction to prescription drugs and her child-custody difficulties, materially impaired her ability to represent her clients. Affidavits from two judges, a magistrate, and her clients demonstrate that she failed to attend numerous hearings, often without notice. Clients attempting to reach Wickerham found her office closed and her phone disconnected. Wickerham did not refund her clients' retainers. She further violated the Supreme Court Rules for the Government of the Bar of Ohio by failing to respond to numerous demands for information by relator or otherwise cooperate in the resulting disciplinary investigations.[1]

---

1. The facts of each violation are detailed in the board's December 5, 2011 report.

**{¶ 10}** Therefore, the master commissioner found that relator had proven by clear and convincing evidence that Wickerham had committed 30 violations of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 30 violations of 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), one violation of 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 26 violations of 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 29 violations of 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 14 violations of 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 27 violations of 1.15(d)[2] (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 30 violations of 1.16(a)(2) (requiring a lawyer to withdraw from representation when the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client), 11 violations of 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), 25 violations of 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 30 violations of 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), 30 violations of 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and 11 violations of Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

---

2. In his complaint, relator alleged that Wickerham had violated Prof.Cond.R. 1.5 with respect to 27 counts of the complaint, but from the misconduct described, it is clear that relator meant to cite Prof.Cond.R. 1.15(d). The master commissioner and the board have perpetuated this error in their reports.

**{¶ 11}** The evidence also clearly and convincingly demonstrates that Wickerham borrowed $13,000 from a client without advising her in writing of the inherent conflict of interest and the desirability of obtaining independent counsel or ensuring that the terms of the transaction were fair, reasonable, and fully disclosed in a writing signed by the client. Indeed, the promissory note, signed by Wickerham alone, provides only the amount of the loan and an annual interest rate of 18 percent. No deadline for repayment is mentioned. The master commissioner found that this conduct violated Prof.Cond.R. 1.8(a)(1) through (3) (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client).

**{¶ 12}** The board has adopted the master commissioner's findings of fact and misconduct as its own, and so do we.

### Sanction

**{¶ 13}** In recommending a sanction, the master commissioner and board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B)(1) and (2). *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. They found that six of the nine aggravating factors set forth in BCGD Proc.Reg. 10(B)(1) were present, including a dishonest or selfish motive, a pattern of misconduct involving multiple offenses, failure to cooperate in the disciplinary process, harm to vulnerable clients, and failure to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (h), and (i).

**{¶ 14}** The master commissioner and board found that that no mitigating factors were present. It is evident that Wickerham has serious mental-health and substance-abuse issues, but they do not qualify as mitigating factors pursuant to BCGD Proc.Reg. 10(B)(2)(g). Scott Mote of OLAP avers that Wickerham signed

a five-year recovery contract with OLAP on August 31, 2010, promised to attend 12-step meetings regularly, and sought admission to an intensive outpatient drug-treatment program. She did not follow through, however, and by October 22, the treatment center had closed Wickerham's file due to nonattendance. Wickerham had sporadic contact with OLAP thereafter, and in mid-February 2011, all contact ceased. Thus, there is no evidence that Wickerham has begun, let alone completed, an approved treatment program, that she underwent a sustained period of successful treatment, or that she will be able to return to the competent, ethical, and professional practice of law in the future. *See* BCGD Proc.Reg. 10(B)(2)(g)(iii) and (iv).

**{¶ 15}** In this case, Wickerham has engaged in a pattern of misconduct that spanned more than four and a half years and involved numerous instances of misappropriation, totaling more than $35,000. Wickerham has neglected client matters, lied to her clients about the status of their matters and the work she intended to perform, and failed to reasonably communicate with her clients. She has also failed to make restitution and failed to cooperate in the resulting disciplinary investigations. Her serious and repeated misconduct demonstrates that she is not fit to practice law.

**{¶ 16}** The presumptive disciplinary sanction for a pattern of misconduct involving dishonesty, misappropriation, and lack of cooperation in disciplinary proceedings is disbarment. *Disciplinary Counsel v. Jones*, 112 Ohio St.3d 46, 2006-Ohio-6367, 857 N.E.2d 1221, ¶ 22. *See also Lorain Cty. Bar Assn. v. Fernandez*, 99 Ohio St.3d 426, 2003-Ohio-4078, 793 N.E.2d 434, ¶ 9 ("The presumptive sanction for misappropriation of client funds is disbarment"); *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (an attorney's "persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack

of any participation in the disciplinary proceedings" warrant disbarment). That sanction is appropriate here.

**{¶ 17}** Accordingly, Michelle Wickerham is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to Wickerham.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

_____