CINCINNATI BAR ASSOCIATION *v.* BRITT.

**[Cite as *Cincinnati Bar Assn. v. Britt,* 133 Ohio St.3d 217, 2012-Ohio-4541.]**

*Attorneys—Misconduct—Failure to provide competent representation—Failure to act with reasonable diligence in representing client—Charging an excessive fee—Failure to properly supervise staff—Failure to hold fees in trust account until earned—Indefinite suspension.*

(No. 2011-2043—Submitted March 21, 2012—Decided October 3, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-048.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Curtis D. Britt of Dayton, Ohio, Attorney Registration No. 0070966, was admitted to the practice of law in Ohio in 1999. In March 2007, he was also admitted to the bar in Kentucky. Although his Kentucky license was suspended from December 2008 to November 2009 for nonpayment of his bar dues, that license is now in good standing.[1]

**{¶ 2}** In June 2010, relator, Cincinnati Bar Association, charged Britt with multiple violations of the Rules of Professional Conduct arising from his handling of a client's bankruptcy matter. In a second amended complaint, relator further alleged that Britt had collected retainers and filing fees from more than 40 clients, converted those funds, and failed to perform the promised services and that the Internal Revenue Service ("IRS") had obtained levies against him for past-due employee tax withholdings.

_____

1. It appears, however, that Britt has a nonpractice exemption for which he has voluntarily agreed not to practice law in Kentucky until the exemption is removed by the Continuing Legal Education Commission upon certification of completion of appropriate continuing-legal-education credit hours. *See* http://www.kybar.org/26 (accessed Aug. 23, 2012).

**{¶ 3}** The parties stipulated that Britt neglected numerous client matters; failed to reasonably communicate with his clients; failed to preserve the identity of client funds and property; and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct that was prejudicial to the administration of justice by converting those funds to his own use and that his conduct adversely reflects on his fitness to practice law.

**{¶ 4}** A panel of the Board of Commissioners on Grievances and Discipline adopted the parties' stipulations of fact and misconduct. After a hearing, where the panel heard Britt's testimony and received exhibits, the panel recommended that he be indefinitely suspended from the practice of law in Ohio and ordered to make full restitution to those clients affected by his misconduct. The board adopted the panel's report in its entirety.

**{¶ 5}** Relator objects to the board's recommended sanction, arguing that Britt's conduct warrants permanent disbarment. For the reasons that follow, we overrule relator's objection, adopt the board's findings of fact, conclusions of law, and recommended sanction with the additional requirements that Britt complete 12 hours of continuing legal education ("CLE") in law-office and trust-account management and that he serve one year of monitored probation upon his reinstatement to the practice of law in Ohio.

### Misconduct

### Count One

**{¶ 6}** With respect to Count One, the parties stipulated and the board found that Sonya Weaver met Britt through Total Bankruptcy, a website that provided bankruptcy client referrals for a fee. At her first appointment, Weaver met Britt's employee, Kenneth Cooper, who, although he was not an attorney, told her that she would qualify for Chapter 7 bankruptcy notwithstanding her ownership interest in three time-share properties. Cooper also advised her to stop paying her credit-card bills and quit her part-time job, which she did.

**{¶ 7}** At that February 6, 2009 appointment, Weaver signed a fee agreement that required her to pay a $1,000 flat fee plus filing fees, and within several weeks she wrote two checks to Britt for a total of $1,424. By early March, she had returned her completed paperwork and bank records to Britt's office and completed an online credit-counseling course. At her first meeting with Britt in April 2009, he informed her that Chapter 7 bankruptcy might not be a viable option, given her ownership interest in certain property, including the time-share properties she had disclosed to Cooper, but that he needed additional information to make a final determination.

**{¶ 8}** At a brief meeting several days later, Britt reviewed Weaver's documents and confirmed that Chapter 7 bankruptcy was not a viable option. When Weaver expressed dissatisfaction because she had relied on Cooper's flawed advice and was two months behind in her credit-card payments, Britt suggested that she contact her creditors to set up a payment plan.

**{¶ 9}** On April 30, 2009, Weaver sent Britt a certified letter terminating his representation and requesting the return of her file, an itemized statement of the legal services rendered, and the return of any unearned fees. Approximately one month later, Britt sent her a $499 check—$299 for the filing fee and $200 for unearned legal fees—but he failed to provide an itemized statement of the services provided and failed to return her file. He had not kept any contemporaneous time records in Weaver's case, but in responding to relator's inquiries, he maintained that he had earned $925 for two hours of direct consultation with Weaver and one hour of file review, billed at $225 per hour, $150 for administrative work performed by his assistant, and a $50 reimbursement for Weaver's credit-counseling course. Weaver, however, disputed that she had spent two hours with Britt. She has retained new counsel to assist her with her bankruptcy filing.

**Count Two**

{¶ 10} With regard to Count Two, the parties stipulated and the board found that in May 2010, Britt agreed to represent Craig Smith in a Chapter 7 bankruptcy. Smith paid a retainer of $800 and gave Britt $299 for the filing fee, and Britt deposited the money into his operating account. Britt did not promptly file the bankruptcy petition and did not respond to Smith's inquiries. He stipulated that the delay in filing was due, in part, to the fact that he had spent the filing fee on unrelated matters. He did eventually file the petition, but only after he received and misapplied other client funds to pay the filing fee.

**Count Three**

{¶ 11} Neil Frazier retained Britt in October 2009 to represent him in the dissolution of his marriage. He gave Britt an $800 retainer and $250 for the filing fee, which Britt deposited in his operating account. Frazier terminated Britt's representation in October 2010 based upon his lack of communication and his failure to file the petition for dissolution. Britt failed to refund Frazier's money because he had spent it on other matters.

**Count Four**

{¶ 12} During relator's investigation of the Smith grievance, Britt admitted that he had a client trust account but that he regularly deposited client money, whether earned or unearned, into his operating account. During his September 28, 2010 deposition, he admitted that he had accepted employment, retainers, and filing fees from 24 to 30 additional bankruptcy clients. He further acknowledged that he had spent their money on other matters and had failed to file their bankruptcy petitions. Although relator asked Britt to provide names and contact information for these clients by October 8, 2010, he did not comply with the request until approximately November 4, 2010—after he had retained counsel.

{¶ 13} The documents Britt provided to relator demonstrated that he had accepted over $40,000 in retainers and filing fees from 41 clients, in addition to

the clients discussed in Counts One through Three, and deposited all of the money into his operating account. Britt used those funds, in part, for his own purposes without any regard to whether he had earned them. He did not take any action to notify the affected clients of his misconduct until after relator initiated its investigation. At the time of the panel hearing, Britt had not made restitution to any of the affected clients, though he had been paying $1,000 per month ($9,350 in all) to local bankruptcy attorney Nick Zingarelli, who had assumed the representation of some of the affected clients.

{¶ 14} The parties further stipulated and the board found that as a result of Britt's failure to withhold federal income taxes or pay unemployment taxes, the IRS had filed two levies, totaling more than $16,000, against him in the bankruptcy court. Consequently, the bankruptcy trustee has remitted fees earned by Britt to the IRS.

### Violations

{¶ 15} The parties stipulated and the board found that Britt violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) by failing to provide Weaver with competent representation as a result of his flawed office intake and review process and violated Prof.Cond.R. 1.5 (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 7.1 (prohibiting a lawyer from making or using false, misleading, or nonverifiable communication about the lawyer or the lawyer's services) by failing to provide Weaver the free initial consultation that the Total Bankruptcy website had promised. The parties also stipulated and the board found that Britt aided in the unauthorized practice of law by failing to properly supervise Cooper, in violation of Prof.Cond.R. 5.3(b) (requiring a lawyer to make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer) and 5.5(a) (prohibiting

a lawyer from assisting another to practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction).

{¶ 16} With respect to the remaining counts, the parties stipulated and the board found that Brit failed to provide diligent, prompt, and competent representation to his clients in violation of Prof.Cond.R. 1.1, 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.4 (requiring a lawyer to reasonably communicate with a client), that he violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property) and (c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance) by failing to properly segregate client funds in a client trust account, that he violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and (d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) by converting client funds, and that the sum of his conduct adversely reflects on his fitness to practice law, in violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 17} We adopt the board's findings of fact and misconduct.

## Sanction

{¶ 18} Noting that taking retainers from clients and failing to perform the promised work is tantamount to theft, relator argued that the appropriate sanction for Britt's conduct is disbarment. Britt, in contrast, requested that the board recommend a two-year suspension, with reinstatement conditioned upon his making full restitution to the affected clients.

{¶ 19} The board found that Britt should be indefinitely suspended from the practice of law in Ohio and ordered to pay full restitution to the clients affected by his misconduct. Relator objects to the board's recommendation and

6

argues that permanent disbarment is the only appropriate sanction for the misconduct at issue in this case.

**{¶ 20}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 21}** Here, in addition to Britt's treating his flat fees as earned upon receipt, depositing them with his client's fee deposits into his operating account, and spending the money without performing the promised work, he has also aided in the unauthorized practice of law by failing to adequately supervise Cooper, and charged a clearly excessive fee.

**{¶ 22}** We have held that disbarment is the presumptive sanction for misappropriation, but we have recognized that this sanction may be tempered with sufficient evidence of mitigating or extenuating circumstances. *See, e.g., Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14, citing *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11 (presumptive disciplinary measure for acts of misappropriation is disbarment); *Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129, ¶ 9 (lesser sanction of indefinite suspension based on the mitigating evidence that respondent had been licensed to practice for approximately 45 years without any previous ethical infraction); *Disciplinary Counsel v. Garrity*, 98 Ohio St.3d 317, 2003-Ohio-740, 784 N.E.2d 691 (indefinitely suspending a lawyer and former pharmacist convicted of stealing prescription drugs for his own use where mitigating factors included the lawyer's drug addiction, demonstrated commitment to sobriety, cooperation in the

investigations leading to and arising out of his drug-related convictions, and the absence of harm to his legal clients).

{¶ 23} Relator argues that Britt has failed to present sufficient mitigating evidence to overcome the presumptive sanction of disbarment. Specifically, relator argues that this court has deviated from the presumptive sanction in cases involving only a handful of clients *and* significant mitigation such as a mental illness or addiction or in cases where the respondent has practiced for many years without misconduct—factors that are not present in this case. *See, e.g.*, *Disciplinary Counsel v. Squire*, 130 Ohio St.3d 368, 2011-Ohio-5578, 958 N.E.2d 914, ¶ 65-66, 70 (indefinitely suspending an attorney who failed to hold client funds separate from his own property, misappropriated client funds for his own benefit, failed to maintain detailed records of the money held and disbursed on behalf of his clients, failed to maintain or produce documentation to support claimed client-related expenditures, borrowed money from clients without disclosing the inherent conflicts of such arrangements or advising his clients to seek independent counsel, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and knowingly made false statements of material fact during the ensuing disciplinary proceeding when mitigating factors included practice of more than 25 years without disciplinary action), citing *Akron Bar Assn. v. Smithern*, 125 Ohio St.3d 72, 2010-Ohio-652, 926 N.E.2d 274 (indefinitely suspending an attorney for converting client funds on more than 30 separate occasions and for depositing more than $100,000 in client retainers in her personal bank account rather than in her firm's trust account when mitigating factors included more than 20 years of practice without disciplinary violations, cooperation in the disciplinary proceedings, an agreement to make full restitution, and gambling and alcohol addictions that were causally related to the attorney's misconduct); and *Cleveland Bar Assn. v. Harris*, 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621 (indefinitely suspending an attorney who converted more

than $29,000 in client funds when mitigating factors included the attorney's status as a military veteran, his 27 years of practice without incident, and letters and testimony from his pastor and several professional acquaintances, including current and former judges, attesting to his dedication and trustworthiness).

**{¶ 24}** As aggravating factors in this case, we find that Britt has engaged in a pattern of misconduct involving multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). The parties also stipulated that the vulnerability of and harm to Britt's clients, who had limited resources and whose bankruptcy filings were delayed, sometimes indefinitely, by Britt's neglect and conversion of their fees, are an aggravating factor. *See* BCGD Proc.Reg. 10(B)(1)(h). And although Britt has retained attorney Nick Zingarelli to assist *some* clients affected by his misconduct and paid him more than $9,000 for that work, at the time of the panel hearing, there were other clients to whom Britt had made no restitution. *See* BCGD Proc.Reg. 10(B)(1)(i).

**{¶ 25}** Relator argues that Britt acted with a dishonest or selfish motive because he deposited his clients' funds into his operating account and then used them to pay his professional and personal obligations. *See* BCGD Proc.Reg. 10(B)(1)(b).

**{¶ 26}** At the panel hearing, Britt testified that he spent 20 years in the Air Force working in the areas of federal acquisitions and contract management and that upon his honorable discharge from the service in 1996, he chose to attend law school. Upon graduating from the University of Cincinnati College of Law in 1999, he worked as a foreclosure attorney for two law firms and then became a staff attorney for a title company. He was laid off by the title company in October 2007 and shared office space with a friend for approximately six months before an Indianapolis law firm opened an office in the Cincinnati suburb of Blue Ash and hired him to handle consumer bankruptcy matters for clients obtained through an Internet-based referral service. Britt was the only employee at the Blue Ash

location and had no experience in bankruptcy law. He quit after two of his first three paychecks bounced.

{¶ 27} After leaving the firm, Britt took the suggestion of Ken Cooper, the Indianapolis firm's business and marketing manager, and opened his own bankruptcy firm, using the same Internet referral service to obtain clients. He maintained an office in Blue Ash from July 2008 through July 2009, an office in the Cincinnati suburb of Kenwood from October 2008 to November 2009, an office in Cincinnati from February 2009 through January 2010, and an office in Florence, Kentucky, from October 2008 through September 2010. His conduct in this case does not appear to have been dishonest or selfish. It was born of his inexperience and lack of guidance as he commenced and rapidly expanded his solo practice.

{¶ 28} As the board found, and relator now argues, Britt has failed to demonstrate that his diagnosis of depression is a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g) because his evaluating psychiatrist opined that his condition "*was not* severe enough to substantially impair his ability to practice law." (Emphasis sic.) Nonetheless, we find that sufficient mitigating factors are present to warrant an indefinite suspension rather than a permanent disbarment in this case.

{¶ 29} First, Britt has no prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a). Britt also made a full and free disclosure to the board and displayed a cooperative attitude toward the proceedings. BCGD Proc.Reg. 10(B)(2)(d). He responded to relator's letters of inquiry and agreed to be deposed on two separate occasions. He admitted the misconduct alleged in the initial grievances against him. And when questioned during his second deposition about his handling of client funds, he admitted that he routinely deposited client payments, including filing-fee deposits, directly into his operating account. At that time, Britt estimated that he had 25 to 30 clients whose bankruptcy petitions had not been

filed because he no longer had the money to pay the filing fees. This disclosure resulted in additional charges levied against Britt in relator's second amended complaint.

{¶ 30} Not only was Britt candid with relator, he also openly acknowledged his own misconduct to the affected clients. In letters to each of them, Britt set out the amount of the payments he had received and advised them:

> These monies should have been deposited into my attorney trust account and held there until earned. I did not deposit them into my trust account but instead deposited them into my operating account. Additionally, I have not instituted your bankruptcy proceeding and so no fees were earned by me. In plain English, I spent the money you paid me before it was earned. My failure to properly hold your money in trust until earned and my failure to prosecute your bankruptcy are both serious ethical violations to which I have admitted. I am currently being prosecuted by the Cincinnati Bar Association in an action pending before the Board of Commissioners on Grievance[s] and Discipline.

{¶ 31} Britt advised his clients that he had made arrangements with attorney Zingarelli to complete their representation, if they so chose, and explained that once his disciplinary action was resolved, his clients could file claims with the Client Security Fund. He also apologized to his clients, stating:

> I know that I have violated your trust and put you in jeopardy by not timely performing the services I promised to perform. I have been suffering from depression and have only recently begun to receive treatment. I say this as an explanation and not an excuse.

As you may know, I served in the Air Force for 20 years and was honorably discharged. I have a family and have always prided myself on being an honest, contributing member of our community. I have dishonored myself and my profession and have let you down. I cannot adequately convey how sorry I am for my actions.

{¶ 32} Britt offered a sincere apology to the members of the panel and expressed his desire to return to the practice of law at some point in the future so that he could provide pro bono services for a nonprofit organization in an effort to fulfill his obligations to the public and to restore his honor and integrity. He has also submitted letters from four former clients and one colleague attesting to his competency, integrity, and professionalism. The writers do not state that they are aware of the pending disciplinary action against Britt, but at a minimum, their letters offer some indication that Britt can be rehabilitated.

{¶ 33} Based on the foregoing, and in light of the sincerity with which Britt has expressed both his remorse and his desire to make amends for his misconduct, we believe that he may one day be able resume the competent, ethical, and professional practice of law. Therefore, we overrule relator's objections and adopt the board's recommended sanction of an indefinite suspension coupled with an order of restitution. Recognizing, however, that Britt's inexperience and lack of guidance contributed significantly to his misconduct, we supplement the board's recommended sanction with the additional requirements that Britt complete 12 hours of CLE in law-office and trust-account management before seeking reinstatement and serve a one-year period of monitored probation upon reinstatement to the practice of law in Ohio.

{¶ 34} Accordingly, Curtis D. Britt is indefinitely suspended from the practice of law in Ohio and ordered to provide to relator, within 30 days of this

opinion, documentation of all funds received from Sonya Weaver, Craig Smith, Neil Frazier, and each of the clients identified in Exhibits D, K, L, and M of Joint Exhibit 1 and make restitution to those clients (or their designated payees) in the aggregate amount of $2,000 per month until he has made full restitution. Britt is further ordered to provide a monthly accounting to relator of all restitution payments made pursuant to this order, commencing with 30 days of this opinion. Any future reinstatement shall be conditioned on proof that Britt has fully complied with this restitution order and completed 12 hours of CLE in law-office and trust-account management in addition to the general requirements of Gov.Bar R. X. Furthermore, upon reinstatement to the practice of law in Ohio, Britt is ordered to serve one year of monitored probation in accordance with Gov.Bar R. V(9). Costs are taxed to Britt.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Dimity V. Orlet, Assistant Bar Counsel; Crabbe, Brown & James, L.L.P., and Robert J. Gehring; and Phillip J. Smith, for relator.

Montgomery, Rennie & Jonson, L.P.A., George D. Jonson, and Brian M. Spiess, for respondent.

_____