CINCINNATI BAR ASSOCIATION *v*. MEZHER AND ESPOHL.

[Cite as *Cincinnati Bar Assn. v. Mezher and Espohl,* 134 Ohio St.3d 319,

2012-Ohio-5527.]

*Attorneys—Misconduct—Failure to communicate basis of a fee and misleading communication regarding fee—Public reprimand.*

(No. 2012-0684—Submitted August 22, 2012—Decided December 3, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-078.

_____

LANZINGER, J.

{¶ 1} Respondent, Kathleen D. Mezher of Cincinnati, Ohio, Attorney Registration No. 0016982, was admitted to the practice of law in Ohio in 1984. Respondent, Frank Eric Espohl of Cincinnati, Ohio, Attorney Registration No. 0065957, was admitted to the Ohio bar in 1996. Mezher and Espohl practice together in the Law Offices of Kathleen Mezher & Associates, L.L.C. ("Mezher & Associates").

{¶ 2} On December 12, 2011, relator, the Cincinnati Bar Association, filed an amended complaint with the Board of Commissioners on Grievances and Discipline. The complaint alleged that Mezher and Espohl had committed professional misconduct when they charged a client for an initial consultation advertised as free on the firm's website and failed to communicate to the client the basis for the fee. Relator asserted that their conduct violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the basis or rate of the fee) and 7.1 (a lawyer shall not make or use a false or misleading communication about the lawyer's services).

**{¶ 3}** After conducting a hearing, a panel of the Board of Commissioners on Grievances and Discipline found that Mezher had violated Prof.Cond.R. 7.1 and that Espohl had violated Prof.Cond.R. 1.5(b). The panel recommended that both respondents be publicly reprimanded. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Both Mezher and Espohl filed objections to the board's findings and recommendation, and relator filed a response to those objections. After reviewing the record, we adopt the board's findings of fact and misconduct, and we agree that a public reprimand is the appropriate sanction for both respondents.

### Misconduct

**{¶ 4}** To establish a lawyer's professional misconduct, relator must prove a violation of the Rules of Professional Conduct by clear and convincing evidence. Gov.Bar R. V(6)(I); *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph two of the syllabus.

> "Clear and convincing evidence" has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Id.* at 331, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 5}** The evidence at the hearing established that Stephanie Burns Mahaffey contacted Mezher & Associates to set up an appointment to talk about her mother's estate and a trust that Mezher had prepared. Stephanie was aware

that on its website, the firm advertised free consultations. The website does not disclose any limitation on the free consultation.

{¶ 6} On February 3, 2011, Stephanie, her husband, and her sister, Jessica Burns, met with Espohl. Espohl asked Mezher's husband, who worked at the firm as a nonattorney and who had a business background, to attend the meeting because of the nature of some of the trust and estate assets. What transpired at the February 3, 2011 consultation is disputed by the participants. The panel and board, however, found that Espohl, as corroborated by Mezher's husband, offered the most reasonable explanation. While this court is not bound by the findings of fact made by the panel and the board, *see Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph one of the syllabus, we give those findings some deference because the panel observed the witnesses firsthand. *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001). However, if the panel or board's findings weigh heavily against the record, we will disregard those findings. *Findlay/Hancock Cty. Bar Assn. v. Filkins*, 90 Ohio St.3d 1, 10, 734 N.E.2d 764 (2000). Because this is not such a case, we defer to the board's findings.

{¶ 7} According to Espohl, the initial portion of the meeting lasted about 30 minutes. He reviewed the will and trust, explained the probate process and the Clermont County Probate Court fee guidelines, and answered the sisters' questions. The sisters agreed to hire Mezher & Associates, and Jessica signed the fee agreement because she had been named executor in her mother's will.

{¶ 8} Espohl testified that the sisters wanted to get started immediately after the fee agreement was signed. He left the conference room to review the will and trust and to research the deeds of two pieces of real estate. After 20 to 25 minutes, he returned to the conference room and continued talking with the sisters for a half hour. Espohl testified that after the meeting, he spent another 15 minutes on the matter to make sure he had not missed anything.

**{¶ 9}** Approximately three weeks later, Jessica called Mezher & Associates and informed a receptionist that she wanted to retrieve the original documents, which the sisters had left with the firm, because the family no longer wished to retain the firm. Jessica arranged to come to the office the next day. Mezher's husband asked Espohl to prepare a bill. Espohl had not kept contemporaneous time records but provided Mezher's husband with a statement of time spent on the matter, from which the invoice was generated. The invoice was for $375; it included a $250 charge for an "ATTY–CONFERENCE" on February 3, which Jessica questioned. Ultimately, the bill was paid in full that day.

*Prof.Cond.R. 7.1—False or Misleading Communication*

**{¶ 10}** The Mezher & Associates website advertised a free consultation; it did not include any limitations. The panel found that Mezher had approved the information for the website. Prof.Cond.R. 7.1 provides

> A lawyer shall not make or use a false, misleading, or nonverifiable communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading.

**{¶ 11}** The panel also found that Mezher, as owner of the firm, had adopted an unwritten policy that while no fees would be charged for a free consultation, the free consultation ended when the prospective client either left without engaging the firm or hired the firm by signing a fee agreement. Mezher conveyed this policy to the associates of the firm.

{¶ 12} The panel found that the lack of further explanation of the firm's policies on the website regarding the free consultation was inherently misleading. The board concurred with the panel and concluded that Mezher violated Prof.Cond.R. 7.1. We also agree that Mezher violated Prof.Cond.R. 7.1 by failing to include on the website any information explaining when the law firm would begin to charge for its services.

{¶ 13} Relator acknowledges that on its face, the term "free consultation" is not inherently misleading, but argues that advertising a free consultation on the firm's website became misleading when the sisters were charged for a consultation that they reasonably assumed to be free. Relator relies on two cases in which attorneys were disciplined for failing to disclose that clients would be liable for costs despite advertising that clients would not be liable for attorney fees if there was no recovery: *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 652, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (advertising that states "if there is no recovery, no legal fees are owed by our clients" violated former DR 2-101(A) because it was deceptive to the public) and *Disciplinary Counsel v. Shane*, 81 Ohio St.3d 494, 692 N.E.2d 571 (1998) (television commercials stating "There's no charge unless we win your case" violated former DR 2-101(E)(1)(c)).

{¶ 14} In her objections to the board's report, Mezher relies on Advisory Opinion 2005-9 issued by the Board of Commissioners on Grievances and Discipline on December 2, 2005, syllabus, which states

> Although a lawyer may not use fee coupons, a lawyer may advertise information regarding fees and charges as set forth in DR 2-101(E)(1), if presented in compliance with DR 2-101(B). Because DR 2-101(E)(1)(a) permits advertisement of fee

information regarding an initial consultation, a lawyer may state in an advertisement whether an initial consultation is free.

**{¶ 15}** The board's advisory opinion, however, is informal and nonbinding on this court. Gov.Bar R. V(2)(C). Also, Mezher's advertisement of a free consultation, by itself, is not the problem. The advertisement was misleading because it omitted a key piece of information—the free consultation ended (and billing began) with the signing of the fee agreement. Use of such an advertisement is similar to the misconduct in *Zauderer* and *Shane,* in which attorneys advertised that there would be no fee if there was no recovery but did not inform clients that they were still responsible for paying costs. We have also recently sanctioned another attorney under Prof.Cond.R. 7.1 for failing to provide a free initial consultation that a bankruptcy referral website had promised. *See Cincinnati Bar Assn. v. Britt*, 133 Ohio St.3d 217, 2012-Ohio-4541, 977 N.E.2d 620, ¶ 15.

**{¶ 16}** Like the board, we acknowledge that there likely would not have been a dispute had Mezher & Associates completed the probate case because the fees would have been governed by the fee agreement, rather than billed on an hourly basis. The firm's discharge, however, made the number of hours worked relevant, but the client was never told during the consultation that it had changed from a free to a billable event.

**{¶ 17}** We therefore adopt the findings and conclusion of the board that Mezher violated Prof.Cond.R. 7.1.

**{¶ 18}** Both the panel and board recommend that the Prof.Cond.R. 7.1 charge against Espohl should be dismissed. We agree that there is no clear and convincing evidence that Espohl violated Prof.Cond.R. 7.1, because nothing in the record shows that he had any control over the firm's advertisement of a free consultation on the website. Nevertheless, Espohl admitted that he did not advise

the sisters that their free consultation ended when they signed the fee agreement. Thus the panel and board concluded that Espohl had violated Prof.Cond.R. 1.5(b).

*Prof.Cond.R. 1.5(b)–Communication of the basis or rate of the fee*

{¶ 19} Prof.Cond.R. 1.5(b) provides

> The nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, unless the lawyer will charge a client whom the lawyer has regularly represented on the same basis as previously charged.

{¶ 20} In this case, the sisters alleged that the whole consultation lasted a half hour and that they left immediately after the fee agreement had been signed. If this had been the case, then undoubtedly charging a $250 consultation fee would have been an ethical violation. However, the board found that Espohl's version of events was more reasonable. According to him, the meeting was broken down into two parts: the initial portion of the meeting, which lasted a half hour and concluded when the fee agreement was signed, and the second portion of the meeting, which included reviewing the will and trust, researching the real estate deeds, and answering additional questions. The second portion of the meeting lasted approximately an hour. Espohl maintains that the sisters were billed for only the second portion of the meeting, and therefore the sisters did receive a free consultation—the initial portion of the meeting—before the fee agreement was signed.

{¶ 21} For the sisters, however, all of the events of the February 3 meeting constituted one consultation for which they believed they would not be charged. We consider that most laypersons would also view the meeting on

February 3 as one continuous consultation, rather than a free consultation followed immediately by a billable attorney conference. Although Espohl viewed the signing of the fee agreement as the line of demarcation, nothing in the fee agreement itself expressly alerted the sisters that their free consultation was over.[1] Nor did Espohl advise them that the free consultation was over. Prof.Cond.R. 1.5(b) requires that an attorney communicate to a client the nature and scope of the representation and the basis or rate of the fee. Thus, an attorney must inform the client when the representation and chargeable events commence. We therefore adopt the findings and conclusion of the board that Espohl violated Prof.Cond.R. 1.5(b).

{¶ 22} As for Mezher, we agree with the panel and board's recommendation that the charge of violating Prof.Cond.R. 1.5(b) be dismissed. Mezher had no contact with the sisters, nor did she participate in the preparation of their invoice.

**Sanction**

{¶ 23} When imposing appropriate sanctions, we consider the mitigating and aggravating factors listed in BCGD Proc.Reg. 10(B). *See Columbus Bar Assn. v. Dugan,* 113 Ohio St.3d 370, 2007-Ohio-2077, 865 N.E.2d 895, ¶ 13. In mitigation, the board noted that both Mezher and Espohl had no prior disciplinary record and that there was an absence of any dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b). The board also found that respondents exhibited a cooperative attitude toward the proceedings and demonstrated their good character. *See* BCGD Proc.Reg. 10(B)(2)(d) and (e). In regard to Mezher, the board added that she had taken steps to attempt to rectify the problems associated with her website and had modified her fee agreements. As for

---

1. The fee agreement does not refer to the free consultation. Although Espohl relies on the language in the fee agreement that it "shall become effective upon receipt of the signed Fee Agreement," this does not relate to the disputed fact of when the free consultation was concluded.

aggravating factors, the board noted that both Mezher and Espohl failed to make timely restitution. *See* BCGD Proc.Reg. 10(B)(1)(i).

{¶ 24} Relator requested, and both the panel and the board recommend, that Mezher and Espohl be publicly reprimanded. Upon our independent review of the record and the aggravating and mitigating factors, we agree that a public reprimand is the appropriate sanction for respondents' violations.

{¶ 25} Kathleen Mezher and Frank Espohl are publicly reprimanded. Costs of these proceedings are assessed jointly against them.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 26} I dissent because I would dismiss the charges. Because the rules for advertising a free consultation have never been made clear, I would still issue the opinion in this case, but I would find that the standards that it provides should apply prospectively only, to give clear notice to the bar of the requirements for this type of advertising.

{¶ 27} Here, respondents were entitled to begin earning their fee once they were retained, and they did in fact perform the work that they billed. Their only error was to fail to advise their client that billable time had started. That is a communication error, not an ethical violation. If we are to make it a violation, we should do so only with fair notice to the bar of what is expected in the future when advertising a free consultation that may become billable time after the attorney is retained.

{¶ 28} I would dismiss these charges against these respondents. They promptly changed their practices after this case, and I believe that they exercised good faith in dealing with their client. The fact that their client thought that she

would get more free work after agreeing to retain the attorneys was not a reasonable assumption. As the majority pointed out, this would have never become an issue if the client had not decided to terminate the representation. Therefore, I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Lindhorst & Dreidame and James F. Brockman; and Katherine C. Morgan, for relator.

Thomas W. Condit; and Michael B. Mezher Jr., for respondent Kathleen Mezher.

Frank E. Espohl, pro se.

_____