**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lorain Cty. Bar Assn. v. Berta*, **Slip Opinion No. 2021-Ohio-1264.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1264

LORAIN COUNTY BAR ASSOCIATION *v.* BERTA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Berta*, Slip Opinion No. 2021-Ohio-1264.]**

*Attorney misconduct—Failure to adequately communicate basis or rate of hourly fees—Public reprimand.*

(No. 2020-1521—Submitted January 27, 2021—Decided April 15, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-027.

_____

**Per Curiam.**

{¶ 1} Respondent, David James Berta, of Elyria, Ohio, Attorney Registration No. 0063775, was admitted to the practice of law in Ohio in 1994. In a June 29, 2020 amended complaint, relator, Lorain County Bar Association, alleged that Berta had committed two ethical violations related to his fees in a single domestic-relations case.

**{¶ 2}** A three-member panel of the Board of Professional Conduct accepted the parties' stipulations of fact and heard testimony from five witnesses, including Berta. After relator rested its case, Berta moved the panel to dismiss both of the alleged rule violations; the panel unanimously granted that motion with respect to one of the alleged violations. The panel later issued a report finding that Berta had failed to adequately communicate to his client the basis or rate of the fees and expenses that would be charged for the representation, and it recommended that he be publicly reprimanded and ordered to make restitution of $850. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties have filed a joint waiver of objections and request that the court adopt the board's report in its entirety.

**{¶ 3}** We adopt the board's findings of misconduct and recommended sanction.

### Facts and Misconduct

**{¶ 4}** The sole issue in this case is whether Berta adequately communicated to his client the basis or rate of the fee and expenses she would be responsible for.

**{¶ 5}** Prof.Cond.R. 1.5(b) provides:

> The nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation * * *. Any change in the basis or rate of the fee or expenses is subject to division (a) of this rule [which prohibits excessive fees] and shall promptly be communicated to the client, preferably in writing.

{¶ 6} In July 2017, Kerri Johnson consulted with Berta about terminating her marriage. Berta did not present Johnson with a written fee agreement. Instead, he wrote "$2,500 flat" on one of his business cards and gave it to her. Johnson was not ready to proceed at that time, and she paid $200 for the consultation. She met with Berta a second time, in August 2017, and paid $1,500 toward the quoted flat fee.

{¶ 7} Although Berta drafted a petition for dissolution, discussions with Johnson's husband soon broke down. Consequently, Berta filed a complaint for divorce on October 12, 2017. On December 15, 2017, Johnson paid the balance of the quoted flat fee plus the $280 filing fee.

{¶ 8} From November 2017 through December 2018, Berta's employer, the Spike & Meckler Law Firm, L.L.P., sent Johnson monthly billing statements itemizing the time that Berta and his secretary had spent on her case. Those statements stated that the case was a dissolution with a flat fee of $2,500 plus court costs of $280 and showed that no balance was due.

{¶ 9} While Johnson's divorce was pending, the proceeds from the sale of marital real property and other marital funds, totaling approximately $180,000, were deposited into Berta's law-firm trust account. The court granted Johnson's divorce on December 10, 2018, and awarded her a property division that included approximately $98,500 of the marital funds held in the trust account. In January 2019, Johnson e-mailed Berta to inquire about the distribution of those funds.

{¶ 10} On January 24, the law firm's bookkeeper e-mailed Johnson a proposed distribution statement identifying the amounts due to each party. The statement deducted $7,730 from Johnson's share for additional attorney fees, which had already been transferred out of the firm's trust account. In response, Johnson sent the bookkeeper and Berta an e-mail identifying several errors or inconsistencies in the proposed distribution statement and stating the amount she believed was due to each party—with no deduction for the additional attorney

fees. Later that day, the bookkeeper sent Johnson an e-mail stating, "I'm guessing you didn't know yet about the atty fees we subtracted," and informing Johnson that she had mailed her an itemized billing statement detailing those fees. In addition to billing Berta's services at $200 an hour, the statement included charges for secretarial services, which were billed at $50 an hour. Johnson e-mailed the bookkeeper again stating, "I was not aware I had any additional fees since I agreed to a flat fee upfront and every bill since I have paid that in full states my balance is ZERO. I would have thought that if I was getting charged more I would have been notified in writing and prior to this." (Capitalization sic.)

{¶ 11} On January 28, Berta sent Johnson an e-mail stating: "As I described at our initial meeting, the flat fee was for a no-fault divorce. As I also explained at the initial intake, cases filed as divorces are billed hourly." He explained that he had just looked at his billing in her case for the first time, and he noted that the statements she had received did indicate "the time that was being billed, but the bookkeeper didn't code the bill as hourly." He indicated that the $200-an-hour rate was a discount from his usual hourly rate of $225 or $250 and instructed Johnson to let him know what she would like to do so that the bookkeeper could cut the checks.

{¶ 12} At Berta's disciplinary hearing, Johnson acknowledged that she had not responded to Berta's e-mail explanation of the hourly billing and had accepted the distribution check that Berta's bookkeeper prepared for her.[1] She explained that she did not further contest the matter at the time, because she needed access to her share of the marital funds to complete the purchase of her new home.

---

1. The panel noted that it had previously dismissed an alleged violation of Prof.Cond.R. 1.15(e) (requiring a lawyer in possession of funds in which two or more persons claim an interest to hold those funds in the lawyer's client trust account until the dispute is resolved) because Johnson had not actively disputed the fee and accepted her distribution check.

{¶ 13} The panel heard conflicting testimony about whether Berta had informed Johnson that he would charge a different fee if her case proceeded as a divorce rather than a dissolution. Johnson testified that the only thing Berta told her about his fees during their initial consultation was that she would be charged a $2,500 flat fee plus court costs, and she said that he never mentioned that she would be charged $200 an hour if the case proceeded as a contested divorce. However, she admitted that it was *possible* that Berta had advised her that his fee structure would change if it was necessary to file a divorce on her behalf and that she simply could not recall that fact due to her emotional state when she first met with Berta. According to Johnson, at the time, she was suffering from debilitating anxiety and depression, was having trouble eating and sleeping, and was participating in an intensive, outpatient mental-health-treatment program. That said, Johnson maintained that the monthly statements she received from October 2017 through December 2018 indicating a flat fee of $2,500 and showing a zero balance reinforced her understanding that Berta had agreed to handle her case for a flat fee.

{¶ 14} In contrast, Berta maintained that he had informed Johnson of the different fee structures for dissolution and divorce cases during their initial consultation, and he produced his handwritten notes from that meeting, which appear to support his position. But Berta also acknowledged that Johnson was in an emotionally fragile state during that meeting and that that may have affected her ability to recall that part of the conversation. He stipulated that he had given her his business card with "$2,500 flat" written on the back, and he admitted at the hearing that he never informed her in writing that he would charge an hourly fee if the case proceeded as a divorce. Berta also claimed that in a telephone call he had had with Johnson before he filed her divorce complaint, he reminded her that his fee had converted to an hourly rate. But he never questioned Johnson about that alleged conversation during her hearing testimony.

{¶ 15} In addition, Berta admitted that he had never informed Johnson that she would be charged $50 an hour for secretarial services performed on her behalf because he had been unaware that his firm charged such fees, even though they were listed in the firm's standard fee agreement. He did not dispute that Johnson had been charged $850 for such services. Furthermore, he admitted that he had not reviewed any of Johnson's monthly bills until the dispute arose and that as a result, he had had no knowledge that for more than one year, his firm had sent Johnson monthly bills that showed secretarial time *and* a zero balance.

{¶ 16} Citing Johnson's emotional state at the time of her initial consultation, the time that elapsed between that consultation and the filing of her divorce complaint, and the monthly bills stating that Johnson had a zero balance on her account, the board found that it had been reasonable for Johnson, a layperson, to believe that she was being charged a flat fee. Therefore, the board determined that Berta had not adequately communicated to Johnson the basis or rate of the hourly fee for his services *and* those of the secretarial staff and that his conduct violated Prof.Cond.R. 1.5(b). We adopt this finding of misconduct.

## Sanction

{¶ 17} When recommending the sanction to be imposed for attorney misconduct, the board considers all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 18} In this case, the board found that just one aggravating factor is present—Berta's conduct harmed a vulnerable client. *See* Gov.Bar R. V(13)(B)(8). As for mitigating factors, the board found that Berta had no record of prior discipline and had lacked a dishonest or selfish motive, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and submitted evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5).

{¶ 19} In determining the appropriate sanction in this case, the board considered four cases in which we publicly reprimanded attorneys who had engaged in misconduct similar to Berta's. For example, in *Cincinnati Bar Assn. v. Mezher and Espohl*, 134 Ohio St.3d 319, 2012-Ohio-5527, 982 N.E.2d 657, a law firm had advertised free consultations but then billed two clients for the second half of a one-hour meeting without explaining that the free consultation ended and a billable conference commenced as soon as the clients signed a written fee agreement. Noting that most laypersons would have viewed the meeting as one continuous consultation, we found that the attorney who met with the clients had violated Prof.Cond.R. 1.5(b) and publicly reprimanded him for his misconduct. *Id.* at ¶ 21, 25. And in *Disciplinary Counsel v. Goldberger*, 158 Ohio St.3d 354, 2019-Ohio-4844, 142 N.E.3d 666, we publicly reprimanded an attorney who, among other things, had agreed to represent a woman in a dispute with her lender but had failed to communicate the nature and scope of his representation or the basis or rate of his fee to the client.

{¶ 20} In accord with this precedent, the board recommends that we publicly reprimand Berta for his misconduct and order him to make restitution of $850 to Johnson for the secretarial fees that were neither properly nor timely disclosed to her. Having thoroughly reviewed the record and applicable precedent in this case, we agree that a public reprimand with an order of restitution is the appropriate sanction for Berta's misconduct.

## Conclusion

{¶ 21} Accordingly, David James Berta is publicly reprimanded for the conduct described above and ordered to make restitution of $850 to Johnson within 90 days of the date of this order. Costs are taxed to Berta.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

O'Toole, McLaughlin, Dooley & Pecora Co., L.P.A., Matthew A. Dooley, and Michael R. Briach, for relator.

Charles J. Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.

_____