COLUMBUS BAR ASSOCIATION *v.* THOMAS.

[Cite as *Columbus Bar Assn. v. Thomas,*

124 Ohio St.3d 498, 2010-Ohio-604.]

*Attorneys at law — Misconduct — Misappropriation of entrusted client funds —*
*Indefinite license suspension.*

(No. 2009-1540 — Submitted October 20, 2009 — Decided February 25, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 09-034.

_____

**Per Curiam**.

**{¶ 1}** Respondent, James D. Thomas of Columbus, Ohio, Attorney Registration No. 0040464, was admitted to the practice of law in Ohio in 1988. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based on findings that he misappropriated from a client at least $32,600 in entrusted funds. We accept the findings that respondent engaged in this professional misconduct and that an indefinite suspension of his license is appropriate.

**{¶ 2}** Relator, Columbus Bar Association, charged respondent in three counts of violating the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct.[1] A panel of the board heard the case, including the parties' stipulations that respondent breached multiple ethical responsibilities incumbent on Ohio lawyers. Dismissing the third

_____

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

count, the panel made findings of fact, conclusions of law, and a recommendation for the indefinite suspension of respondent's license. The board adopted the panel's findings of misconduct and recommendation.

{¶ 3} The parties do not object to the board's report.

## Misconduct

{¶ 4} Respondent has practiced almost exclusively in the field of creditors' rights and debt collection. After working for 12 years as a salaried employee for various law firms and companies, respondent opened his own law practice in 2000.

{¶ 5} In 2003, respondent contracted with Winona Holdings, Inc., a check-cashing company doing business as Checkcare Systems, to provide legal services related to processing debt-collection claims. Checkcare paid respondent $200 per week to review and sign prepared collection notices and legal complaints. He also represented Checkcare in litigation to resolve contested claims, receiving a 30 percent contingent fee of the amounts collected. As part of his duties, respondent deposited money collected on Checkcare's behalf in his client trust account, disbursed proceeds to his client on a weekly basis, and was to periodically report to his client deposits and disbursements from the account.

{¶ 6} In October 2004, however, respondent began experiencing cash-flow problems resulting from a large California client's delay in paying his $7,500 monthly salary for collection work that he performed for the company in Ohio. To cover the shortfall that this delay caused in his family's budget, respondent wrote himself a check from the Checkcare funds held in his trust account. When the California client did pay him, respondent did not reimburse the account.

{¶ 7} The California client continued to delay payments to respondent, and respondent continued to write checks against the Checkcare proceeds in his trust account without repayment. Beginning in October 2004 and ending in mid-

June 2006, respondent made 38 such illegal disbursements of varying amounts. In the end, he had misappropriated at least $32,600 in funds belonging to Checkcare.

**{¶ 8}** Respondent concealed his theft initially by misleading his client as to amounts he had actually collected. Checkcare eventually suspected the theft, however, and sued for an accounting. Respondent and his client resolved the dispute by having respondent execute a cognovit note for $44,000 and by also agreeing to add to the value of the note misappropriated sums discovered after execution of the note. Respondent also agreed to buy a life insurance policy and name Checkcare the beneficiary.

**{¶ 9}** Respondent paid a few installments toward the cognovit note but then defaulted. In November 2007, Checkcare obtained a judgment on the note against respondent for $57,599. Respondent has not paid the judgment and has not purchased the life insurance policy he agreed to buy.

**{¶ 10}** Respondent admitted that by misappropriating Checkcare's funds and failing to appropriately account to his client for those funds, he violated the following ethical standards:

**{¶ 11}** 1. DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**{¶ 12}** 2. DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

**{¶ 13}** 3. DR 7-101(A)(3) (prohibiting a lawyer from intentionally causing a client prejudice or damage during representation).

{¶ 14} 4. DR 9-102(B)(3) and Prof.Cond.R. 1.15(a)[2] (requiring a lawyer to maintain records and account for client funds).

{¶ 15} 5. Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly pay funds to which a client is entitled and afterward render a full accounting).

{¶ 16} The board accepted these admissions, and we confirm the board's findings.

**Sanction**

{¶ 17} In recommending a sanction, the board weighed the following aggravating factors pursuant to Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings of the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.):

{¶ 18} "a. Though motivated by financial hardship, Respondent clearly had a dishonest and selfish motive for his actions. BCGD Proc.Reg. 10(B)(1)(b).

{¶ 19} "b. There is a pattern of misconduct in that not only did Respondent fail to remit his client's funds to the client, he procrastinated in providing an accounting to buy time and hide his pilfering of the money. BCGD Proc.Reg. 10(B)(1)(c).

{¶ 20} "c. There are multiple offenses that span a period of eighteen months. BCGD Proc. Reg.10(B)(1)(d).

{¶ 21} "d. Though not charged in the complaint filed by Relator, Respondent admitted during the hearing that he did not have malpractice insurance [as required by Prof.Cond.R 1.4(c) under his contract with Winona] and that he did not provide the required notice to his clients.

{¶ 22} "e. Though the client was a corporation, it was in a vulnerable position since Respondent was acting in a fiduciary capacity for Checkcare. BCGD Proc.Reg. 10(B)(1)(h).

---

2. The parties do not dispute that the stipulations miscited Prof.Cond.R. 1.15(a) and (d) as Prof.Cond.R. 1.5 (relating to fees and expenses).

**{¶ 23}** "f. Respondent has made only a negligible amount of restitution in the approximate amount of $800. BCDG Proc.Reg. 10(B)(1)(i)."

**{¶ 24}** Against these aggravating factors, the board weighed the following mitigating factors:

**{¶ 25}** "a. Respondent has no prior disciplinary violations. BCGD Proc.Reg. 10(B)(2)(a).

**{¶ 26}** "b. There has been full and free disclosure together with complete cooperation with Relator's investigation and prosecution. Indeed, counsel for Relator remarked to the Panel that in all of his years of work in this area, he has never encountered a more cooperative Respondent. BCGD Proc.Reg. 10(B)(2)(d).

**{¶ 27}** "The Panel was not presented with any evidence of Respondent's good character and reputation, and Respondent has not been subjected to other penalties and sanctions."

**{¶ 28}** In adopting the panel's report and concluding that an indefinite suspension rather than disbarment was appropriate, the board reasoned:

**{¶ 29}** "The presumptive penalty for violation of DR 1-102(A)(4) and, presumably Prof.Cond.R. 8.4(c), is disbarment when theft of client funds is involved. *Disciplinary Counsel v. McCauley,* 114 Ohio St.3d 461, 2007-Ohio-4259 [873 N.E.2d 269], at ¶ 22. However, significant mitigating circumstances can justify the lesser penalty of an indefinite suspension. *Cincinnati Bar Assn. v. Rothermel,* 104 Ohio St.3d 413, 2004-Ohio-6559 [819 N.E.2d 1099].

**{¶ 30}** " * * * Relator recommended a two year suspension with one year stayed. It was Relator's position that Respondent intended all along to repay the money, but circumstances simply kept that from happening. Respondent did not take issue with this recommendation, but suggested to the Panel that he would be in a better position to repay the amounts owed if he could continue practicing law. This comment by Respondent is fairly indicative of the naiveté with which he has

viewed these proceedings and the ramifications of his conduct. While Respondent was clearly remorseful and humiliated by what he did to his client and, indeed, his family, it is doubtful that he fully appreciates the gravity of the legal proceedings in which he is immersed.

**{¶ 31}** "* * * Respondent did convince the Panel that his theft of the funds was born more of financial necessity than greed. His law practice was only marginally successful and he clearly wrote the checks to alleviate cash flow problems that were not of his making. His family, which at the time consisted of a wife and four minor children, had mortgage and other payments to be made. With a business income that was limited to begin with, nonpayment by his client apparently put a lot of pressure on Respondent to make up the deficit.

**{¶ 32}** "* * * For these reasons, the Panel declines to recommend disbarment but instead would recommend the lesser punishment of an indefinite suspension with reinstatement conditioned on his making restitution to Winona Holdings, Inc. This sanction is consistent with a number of similar cases that have been decided by the Supreme Court of Ohio. In *Disciplinary Counsel v. McCauley,* 114 Ohio St.3d 461, 2007-Ohio-4259 [873 N.E.2d 269], the respondent was given an indefinite suspension for multiple acts of misconduct. He commingled personal funds and client funds in his trust account, and paid personal and business expenses through that account. More significantly, the respondent misappropriated almost $200,000 from a client for whom he was doing contingent fee collection work. Finally, Mr. McCauley spent over $50,000 that his bank had mistakenly deposited into his account knowing that the money did not belong to him. See also *Cuyahoga Cty. Bar Assn. v Maybaum,* 112 Ohio St.3d 93, 2006-Ohio-6507 [858 N.E.2d 359] (Taking client funds being held to pay medical bills).

**{¶ 33}** "* * * In *Cincinnati Bar Assn. v. Rothermel,* 104 Ohio St.3d 413, 2004-Ohio-6559 [819 N.E.2d 1099], the Supreme Court rejected the

6

recommendation of the Board that the respondent be disbarred for taking client funds, and indefinitely suspended him. In *Rothermel,* the respondent used $12,980 of his client's funds that were on deposit in his trust account for personal and business expenses. Notwithstanding his cooperation, contrition and restitution, the Board felt that his prior disciplinary offense for the same conduct together with the selfishness of his conduct justified the ultimate sanction of disbarment. The Supreme Court rejected the Board's recommended sanction noting that the respondent had admitted his misconduct and that he had made a forthright and conciliatory oral argument to the Court for leniency, all of which persuaded the Court to conclude that the respondent would be able to eventually return to the ethical practice of law in the future. *Rothermel,* at ¶ 21.

{¶ 34} "* * * Admittedly, *McCauley* and *Rothermel* can be distinguished from Respondent's case here, based on the fact that the respondents in these cases made full restitution. However, the Panel does not believe that Respondent's destitute financial situation should result in a more severe punishment. This is Respondent's first offense; he was fully cooperative with the investigation and prosecution of his case; and Respondent convinced the Panel that he was truly sorry for his conduct. His will be a difficult journey back to reinstatement. Not only will he have to support his family of six * * * without a law license, but he will have to also garner sufficient funds to repay his client a rather substantial amount of money plus accumulated interest.

{¶ 35} "* * * It is, therefore, the Panel's recommendation that Respondent be suspended from the practice of law for an indefinite period of time, that as a condition of reinstatement he make full restitution to Winona Holdings, Inc., and that he pay the costs of these proceedings."

{¶ 36} We accept the recommendation as to sanction. Respondent is therefore suspended indefinitely from the practice of law in Ohio. Pursuant to Gov.Bar R. V(10)(B), he may not petition for readmission until two years from

the date of our order. Moreover, consistent with the readmission requirement in Gov.Bar R. V(10)(E)(1), respondent shall make full restitution to Winona Holdings, Inc. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., and Michael L. Close; and Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

James D. Thomas, pro se.

_____