AKRON BAR ASSOCIATION *v*. SMITHERN.

[Cite as *Akron Bar Assn. v. Smithern*, 125 Ohio St.3d 72, 2010-Ohio-652.]

*Attorneys at law — Multiple disciplinary violations — Felony conviction — Indefinite license suspension.*

(No. 2009-1522 — Submitted November 17, 2009 — Decided March 3, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-036.

_____

**Per Curiam.**

{¶ 1} Respondent, Michelle A. Smithern of Akron, Ohio, Attorney Registration No. 0032850, was admitted to the practice of law in Ohio in 1986. On February 17, 2009, we suspended respondent's license to practice law on an interim basis, pursuant to Gov.Bar R. V(5)(A)(4), upon receiving notice that she had been convicted of a felony. *In re Smithern*, 120 Ohio St.3d 1520, 2009-Ohio-686, 901 N.E.2d 240.

{¶ 2} The Board of Commissioners on Grievances and Discipline now recommends that we indefinitely suspend respondent's license to practice law based on the board's findings that respondent was convicted of felony theft for stealing money from her law firm. The board also recommends that we credit respondent for the time she served under the interim suspension. We accept the board's findings and conclusion and indefinitely suspend respondent's license to practice law in Ohio, with credit for time served under the interim suspension.

{¶ 3} On June 9, 2008, relator, the Akron Bar Association, charged respondent with 33 counts of misconduct, alleging in each count violations of DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (prohibiting conduct that adversely reflects on

the lawyer's fitness to practice law), 7-101(A)(3) (prohibiting intentional prejudice or damage to a client during the course of the professional relationship), and 9-102(A) and (B)(3) (requiring the preservation of the identity of client funds).

{¶ 4} A three-member panel of the board heard the case. At the hearing, the relator withdrew count 25 of the complaint. The panel subsequently concluded that there was insufficient evidence to prove that respondent had violated DR 7-101(A)(3) and consequently dismissed that violation in the remaining 32 counts. However, the panel found that there was clear and convincing evidence that respondent had committed the other charged violations in all remaining 32 counts and recommended an indefinite suspension with conditions that must be satisfied before respondent could apply for reinstatement. The Board of Commissioners on Grievances and Discipline adopted the panel's findings of misconduct and the recommended sanction.

**Misconduct**

{¶ 5} Respondent began working for Buckingham, Doolittle & Burroughs, L.L.P. ("Buckingham") in 1985 as a law clerk, and after passing the bar, as an associate. In the mid 1990s, she became a partner. From 2004 to 2006, respondent converted retainer fees from more than 30 clients by depositing them in her personal bank account rather than in Buckingham's trust account. In total, respondent stole approximately $108,000 from Buckingham.

{¶ 6} Attorneys at Buckingham discovered the thefts only after one of respondent's clients made complaints about her bill. The firm's records showed that the client had never paid a retainer, even though the client had a check showing that she had. When confronted with this information, respondent admitted to the thefts.

{¶ 7} In 2007, a grand jury indicted respondent for aggravated theft of at least $100,000. Respondent pleaded guilty to a lesser charge of theft, a fourth-

degree felony. The trial court imposed a 12-month prison sentence, which it suspended upon the condition that respondent successfully complete five years of community control.

{¶ 8} Pursuant to respondent's admitted thefts, the board found by clear and convincing evidence that respondent had violated DR1-102(A)(4), 1-102(A)(6), and 9-102(A) and (B)(3). We accept these findings of misconduct.

## Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. "Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account 'all relevant factors' in determining what sanction to impose. BCGD Proc.Reg. 10(B)." *Dayton Bar Assn. v. Schram,* 122 Ohio St.3d 8, 2009-Ohio-1931, 907 N.E.2d 311, ¶ 8.

### *Aggravating and Mitigating Circumstances*

{¶ 10} In mitigation, the board recognized that respondent had no disciplinary record prior to her felony suspension and has cooperated throughout the disciplinary proceedings. The board recognized that respondent's psychologist testified that respondent's gambling and drinking addictions were the cause of respondent's stealing. The board also found that respondent has acknowledged her addictions, is receiving treatment for these addictions, and can overcome these addictions with continued treatment. The board also found that

respondent has entered into a settlement with Buckingham's insurer to pay full restitution for the money that she stole. Finally, respondent submitted letters of support from two attorneys and a judge.

{¶ 11} However, it is equally clear that respondent had a dishonest and selfish motive in stealing the money. It is also notable that respondent's conduct occurred over a two-year period and involved over 30 separate thefts that totaled over $100,000. Moreover, it was not until she was faced with discrepancies in one of her client's bills that respondent admitted to stealing her client's retainer fees.

*Similar Cases*

{¶ 12} Respondent argues that a two-year suspension with 18 months stayed on satisfaction of certain conditions is a more appropriate sanction, citing *Cincinnati Bar Assn. v. Washington,* 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435. In *Washington,* the attorney billed multiple insurance clients $91,000 for work that he did not perform. He also converted $4,000 from two clients for his own personal use. The board found that Washington had had a cocaine and alcohol dependence that was the primary cause of his misconduct. Washington had signed a contract with the Ohio Lawyers Assistance Program ("OLAP") prior to his disciplinary hearing, and he had paid full restitution. The court imposed a two-year suspension with 18 months stayed on the conditions that respondent (1) be supervised by a monitoring attorney, (2) comply with his OLAP contract, and (3) commit no more misconduct. Id. at ¶ 9-10.

{¶ 13} In the instant case, respondent has yet to enter into a contract with OLAP. Further, although she has reached a settlement agreement with Buckingham's insurer, she has yet to pay the balance on the restitution that she owes. Finally, and perhaps most significantly, respondent misappropriated funds on more than 30 separate occasions over a two-year period. Because of these differences, we hold that respondent's case is distinguishable from *Washington*.

4

{¶ 14} When an attorney undertakes a pattern involving numerous acts of misconduct in converting law-firm funds, we have held that an indefinite suspension is appropriate. See *Toledo Bar Assn. v. Crossmock,* 111 Ohio St.3d 278, 2006-Ohio-5706, 855 N.E.2d 1215, ¶ 3, 11 (indefinite suspension for attorney's misappropriation of over $300,000 in law-firm funds over a ten-year period); *Disciplinary Counsel v. Yajko* (1997), 77 Ohio St.3d 385, 389,674 N.E.2d 684 (indefinite suspension for misappropriating law-firm funds on 20 separate occasions from 20 clients over a seven-year period); *Disciplinary Counsel v. Crowley* (1994), 69 Ohio St.3d 554-556, 634 N.E.2d 1008 (indefinite suspension for misappropriation of approximately $200,000 of law-firm funds from as many as 17 clients); *Columbus Bar Assn. v. Osipow* (1994), 68 Ohio St.3d 338, 340, 626 N.E.2d 935 (indefinite suspension for failing to report fees to firm, misrepresenting expenses, and misappropriating client and law-firm funds).

{¶ 15} Accordingly, we accept the board's recommended sanction and therefore indefinitely suspend respondent from the practice of law in Ohio. We also accept the board's recommended conditions on respondent's petitioning for reinstatement except for the condition that respondent be in compliance with the terms of her probation. Rather, we require that she complete all court-imposed probation prior to petitioning for reinstatement.

{¶ 16} Accordingly, in addition to the requirements of Gov.Bar R. V(10), respondent must upon petitioning for reinstatement show that (1) she has entered into a contract with OLAP and is in compliance with its requirements, (2) she has completed all court-imposed probation, (3) she is in compliance with the settlement agreement between her and Federal Insurance Company and is current on her payment of restitution, and (4) she has received a prognosis from a qualified health-care professional or alcohol/substance-abuse counselor that she is able to return to the competent, ethical, professional practice of law. Finally, we

grant respondent credit for time served under the February 17, 2009 interim suspension.

{¶ 17} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Nathan A. Ray and Vincent Alfera, for relator.

Charles E. Grisi, for respondent.

_____