CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* KELLY.

[Cite as *Cleveland Metro. Bar Assn. v. Kelly,*

**132 Ohio St.3d 292, 2012-Ohio-2715.]**

*Attorneys at law—Misconduct—Neglect of entrusted legal matter—Failure to cooperate in disciplinary investigation—Indefinite suspension.*

(No. 2011-2038—Submitted January 18, 2012—Decided June 20, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-037.

_____

**Per Curiam**.

{¶ 1} Respondent, Thomas R. Kelly of Lakewood, Ohio, Attorney Registration No. 0040319, was admitted to the practice of law in Ohio in 1988. On November 3, 2009, we suspended him for his failure to register as an attorney for the 2009-to-2011 biennium. *In re Attorney Registration Suspension of Kelly*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. That suspension remains in effect.

{¶ 2} On April 11, 2011, relator, Cleveland Metropolitan Bar Association, filed a three-count complaint alleging that Kelly had violated the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct in his representation of two clients and that he had failed to cooperate in the ensuing disciplinary investigations.[1]

{¶ 3} Although the Board of Commissioners on Grievances and Discipline served the complaint by certified mail and Kelly signed for it, he did

_____

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility.

not file an answer. Consequently, relator moved the board to find Kelly in default.

**{¶ 4}** The board appointed a master commissioner, who found Kelly in default and found that relator had proved by clear and convincing evidence that Kelly had neglected one client's legal matter and had failed to respond to the ensuing disciplinary investigation, but concluded that there was insufficient evidence to support relator's allegations regarding a second client. Based upon her findings of misconduct, the master commissioner recommended that Kelly be indefinitely suspended from the practice of law.

**{¶ 5}** The board adopted the master commissioner's findings of fact and misconduct and recommends that count two of the complaint be dismissed. However, the board recommends that Kelly be suspended from the practice of law for two years, with one year stayed on the condition that he refund $1,200 to his client. We adopt the board's findings of fact and misconduct, with some modification, as our own, and dismiss count two of relator's complaint. However, based upon the sanctions imposed for comparable misconduct, we indefinitely suspend Kelly from the practice of law in Ohio.

### Misconduct

**{¶ 6}** With respect to count one, the board found that in June 2009, Robert E. Jakubs retained Kelly to represent him in a divorce. He paid Kelly $1,000 in three installments. Kelly wrote three letters to Jakubs's wife suggesting dissolution of the marriage and twice met with Jakubs to discuss the status of the case. After those meetings, Kelly failed to respond to Jakubs's telephone calls for three weeks. He later spoke with Jakubs and requested an additional $200 for filing fees. Jakubs paid the money but never heard from Kelly again. Jakubs filed his action pro se and then hired another attorney. Kelly has not refunded his money.

**{¶ 7}** Although relator's complaint charged Kelly with violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), the master commissioner and board found only that he had "neglected the representation of Jakubs."

**{¶ 8}** We agree that Kelly violated Prof.Cond.R. 1.3 but also find that he failed to keep Jakubs reasonably informed about the status of his matter and failed to comply with his reasonable requests for information in violation of Prof.Cond.R. 1.4(a)(4). Moreover, by collecting his fee from Jakubs and then failing either to perform the work or refund the money, Kelly violated Prof.Cond.R. 1.5(a) and 1.16(e). *See, e.g., Columbus Bar Assn. v. Harris*, 108 Ohio St.3d 543, 2006-Ohio-1715, 844 N.E.2d 1202 (finding that an attorney who received a $2,000 retainer but did not file any pleadings or return the client's calls and refunded only $860 after the representation was terminated charged an illegal or clearly excessive fee).

**{¶ 9}** The second count of relator's complaint alleges that Kelly voluntarily dismissed a malpractice action against a nursing home without his client's consent and that his failure to attach a Civ.R. 10(d) affidavit of merit to the refiled complaint resulted in the subsequent dismissal of the action. Relator alleged that Kelly's conduct with respect to this client prior to February 1, 2007, violated DR 6-101(A)(1) (prohibiting a lawyer from handling a matter that he is not competent to handle without obtaining assistance from a lawyer who is competent to handle it), 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the

lawful objectives of his client), and 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services) and that his conduct after that date violated Prof.Cond.R. 1.3 and 1.4(a)(3).

{¶ 10} The master commissioner and board, however, found that the only evidence submitted in support of these allegations was a certified copy of the malpractice complaint filed on behalf of the affected client and concluded that it did not clearly and convincingly demonstrate that Kelly committed the alleged misconduct. Like the complaint in the disciplinary action, the malpractice complaint contains statements of the respondent's alleged misconduct—not findings by a court that the alleged misconduct occurred. Gov.Bar R. V(6)(F)(1)(b) specifies that a motion for default shall contain "[s]worn or certified documentary prima facie evidence in support of the allegations made." We have previously instructed relators to submit evidence that directly establishes the charges of misconduct, preferably in the form of affidavits executed by the grievants themselves. *Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 9. And when the grievant is unavailable, an affidavit executed by an investigator may suffice, provided the affidavit explains why the grievant's sworn statement is unobtainable in addition to reciting the investigator's own knowledge of the alleged misconduct. *Id.* Therefore, we adopt the board's implicit finding that a certified copy of an unsworn malpractice complaint is not an adequate substitute for a grievant's affidavit, and we dismiss the allegations contained in count two of relator's complaint.

{¶ 11} With regard to count three of relator's complaint, the master commissioner and board found that relator had engaged in extensive efforts to inform Kelly of the grievance and the malpractice suit filed against him and to obtain his cooperation in the resulting disciplinary investigation. Numerous letters mailed to the address Kelly had provided to the Office of Attorney Services were returned unclaimed. Relator also attempted to hand-deliver a letter, but it

appeared that Kelly no longer resided at his registered address. A private investigator retained by relator was unable to locate Kelly.

{¶ 12} On September 16, 2010, Kelly called relator's office and spoke with Heather Zirke, assistant counsel. He advised her that he had received a letter from relator regarding the Jakubs grievance and that he was aware of the malpractice suit against him. He provided relator with an updated address and stated that he did not intend to practice law any longer. He later spoke with relator's investigator and stated that he would retain legal counsel. Relator sent several letters to Kelly's new address by regular and certified mail, notifying him that the board had found probable cause that he had violated disciplinary rules and stating relator's intent to file a complaint with the board, but the certified letters were returned unclaimed, and Kelly did not respond.

{¶ 13} Based upon these facts, the master commissioner and board found that Kelly had failed to cooperate with relator's investigation, in violation of Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). We adopt the board's finding of fact and misconduct.

### Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 15} As aggravating factors in this case, we find that Kelly has refused to acknowledge the wrongful nature of his conduct, caused harm to a vulnerable

client, and failed to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(g), (h), and (i). The only mitigating factor is that, except for his current attorney-registration suspension, Kelly does not have a prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(2)(a).

{¶ 16} The master commissioner found that an indefinite suspension was the appropriate sanction for Kelly's misconduct. The board, however, recommends that Kelly be suspended from the practice of law in Ohio for two years, with one year stayed on the condition that he refund the $1,200 he received from Jakubs.

{¶ 17} An attorney's neglect of an entrusted legal matter and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension. *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10; *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19. Kelly not only neglected a client's legal matter and failed to cooperate in the resulting disciplinary investigation; he also failed to keep his client reasonably informed about the status of his matter, failed to comply with his reasonable requests for information, and in effect misappropriated that client's funds by collecting and retaining a fee without performing the work. Thus, we agree that an indefinite suspension, as recommended by the master commissioner, is the appropriate sanction for this misconduct.

{¶ 18} Accordingly, Thomas R. Kelly is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Kelly.

Judgment accordingly.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would impose a two-year suspension, with one year stayed on condition, as recommended by the board.

_____

Frantz Ward, L.L.P., Patrick F. Haggerty, and Andrew M. Szilagyi, for relator.

_____