STARK COUNTY BAR ASSOCIATION *v.* WILLIAMS.

[Cite as *Stark Cty. Bar Assn. v. Williams,* 137 Ohio St.3d 112,

2013-Ohio-4006.]

*Attorney misconduct—Theft of client funds—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Deceptive practices during disciplinary process—Permanent disbarment.*

(No. 2012-2072—Submitted April 10, 2013—Decided September 24, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-060.

_____

**Per Curiam**.

{¶ 1} Respondent, Agatha Martin Williams, of Canton, Ohio, Attorney Registration No. 0052652, was admitted to the practice of law in Ohio in 1991. Relator, Stark County Bar Association, charged Williams with professional misconduct in seven client matters, including misappropriating client funds. During the pendency of this matter, Williams pled guilty to felony counts of forgery and theft stemming from some of the same misconduct charged in the disciplinary complaint. She was sentenced to five years of community control but violated those sanctions and is now serving an eight-and-a-half-year prison sentence. In April 2012, after receiving notice of her convictions, we suspended Williams from the practice of law on an interim basis pursuant to Gov.Bar R. V(5)(A)(4). *In re Williams*, 131 Ohio St.3d 1514, 2012-Ohio-1720, 965 N.E.2d 313.

{¶ 2} Williams stipulated to most of the allegations and charged misconduct in relator's third amended complaint, and a three-member panel of the Board of Commissioners on Grievances and Discipline recommended that

Williams be indefinitely suspended from the practice of law, with conditions for reinstatement. The board adopted the panel's findings of fact, misconduct, and recommended sanction. Relator objects, arguing that the aggravating factors and this court's precedent warrant permanent disbarment.

{¶ 3} For the reasons explained below, we adopt most of the board's findings of fact and misconduct but sustain relator's objection. The circumstances here require Williams's permanent disbarment.

**Misconduct**

{¶ 4} In five separate client matters, Williams engaged in a pattern of dishonesty, neglect, serious misuse of her IOLTA account, and misappropriation of client funds—mostly to maintain a gambling addiction. Her conduct has resulted in multiple and repeated violations of the Rules of Professional Conduct.

*1. Count one—the Jackson matter*

{¶ 5} During her representation of Kevin Jackson, Williams obtained a $100,000 settlement check made payable to Williams, Jackson, another lienholder on the funds, and the lienholder's subrogee. Williams endorsed the check in her name and on behalf of the subrogee "by declaratory judgment" and then deposited the funds into her IOLTA account. The subrogee, however, had not given Williams the authority to endorse the check, and Williams had not filed any declaratory-judgment action. Williams later pled guilty to forgery in connection with her endorsement of the settlement check.

{¶ 6} The lienholder later filed suit against Williams and Jackson seeking to assert its right to the settlement proceeds. The parties eventually settled, but Williams paid herself $41,371.98 out of the settlement proceeds, which was well above the 33⅓ percent she had agreed to in her contingent-fee agreement with Jackson. In addition, after she received the $100,000 check but before she disbursed the proceeds in accordance with the settlement agreement,

Williams withdrew the funds and converted them for personal use; at one point, the balance of her IOLTA account was $107.71.

{¶ 7} The parties stipulated, the board found, and we agree that Williams's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.5(a) (prohibiting a lawyer from collecting an illegal or clearly excessive fee), 1.15(a) (requiring a lawyer to preserve the identity of client funds in a trust account separate from the lawyer's own property), 1.15(c) (prohibiting a lawyer from withdrawing fees or expenses from a client trust account before fees are earned or expenses incurred), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 1.15(e) (requiring a lawyer in possession of funds in which two or more persons claim an interest to hold those funds in his client trust account until the dispute is resolved), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*2. Count two—the White matter*

{¶ 8} Williams represented Kathryn and Robert White on a contingent-fee basis after Kathryn suffered injuries from an automobile accident. During that representation, Williams personally guaranteed the payment of Kathryn's medical bills and accepted responsibility for her outstanding medical liens. Williams eventually obtained a $100,000 settlement check from the tortfeasor's insurance company, but the Whites have not received any of these proceeds, despite repeated attempts by Kathryn to contact Williams.

{¶ 9} After commencement of relator's disciplinary investigation, Williams visited the Whites, informed them about the investigation, and assured them that their settlement proceeds were still being held in her IOLTA account. According to Kathryn, Williams also requested that they refrain from assisting in

the disciplinary investigation. Weeks before this visit, however, Williams's IOLTA account had a balance of only $1.64. Williams later pled guilty to theft for stealing these client funds.

{¶ 10} In addition, Robert's employer—whose health-insurance plan had paid most of Kathryn's medical bills—sued the Whites for its share of the settlement proceeds and obtained a default judgment against them for $63,829.70, plus interest. A copy of the employer's complaint was sent to Williams, but she took no action to resolve or defend the case.

{¶ 11} The parties stipulated, the board found, and we agree that Williams's conduct violated Prof.Cond.R. 1.3, 1.5(c) (requiring a lawyer who becomes entitled to compensation under a contingent-fee agreement to provide the client with a closing statement before taking the compensation), 1.8 (prohibiting a lawyer from entering into an agreement or transaction that could reasonably create a conflict of interest), 1.8(e) (prohibiting a lawyer from providing financial assistance to a client in connection with contemplated litigation), 1.15(a), 1.15(c), 1.15(d), and 1.15(e), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

*3. Count three—the Lemon estate*

{¶ 12} Williams was hired to administer the estate of Carlton Lemon, and without legal authorization, she transferred $8,145 from the administrator's account into her own personal checking account. The administrator's account became overdrawn, and the probate court ultimately removed Williams as administrator. She subsequently pled guilty to theft.

{¶ 13} The parties stipulated, the board found, and we agree that Williams's conduct violated Prof.Cond.R. 1.3, 1.15(a), 8.4(b), 8.4(c), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We reject

the board's recommendation that Williams also violated Prof.Cond.R. 1.5. Relator's complaint did not charge Williams with violating that rule, and relator did not present evidence to support it.

### 4. Count four—the Talbert matter

{¶ 14} Williams also represented Lemon's mother, Sarrah Talbert, who was a beneficiary of Lemon's life-insurance policy. Williams acquired a check from the insurance company for $81,599.31 and deposited the money into her IOLTA account. While she distributed about $16,731 of the insurance proceeds to Talbert, Williams withdrew and spent the remaining amount. As alleged in previous counts, Williams later pled guilty to theft in connection with taking these client funds.

{¶ 15} The parties stipulated, the board found, and we agree that Williams's conduct violated Prof.Cond.R. 1.15(a), 8.4(b), 8.4(c), and 8.4(h). In its objections, relator now asserts that its charge for a violation of Prof.Cond.R. 8.4(d) under this count and count five was inappropriate. Without deciding the correctness of relator's assertion, we dismiss relator's charges under Prof.Cond.R. 8.4(d) in counts four and five, as Williams has already violated multiple sections of that rule.

### 5. Count five—the Gates matter

{¶ 16} Williams agreed to represent Lucy Gates on a contingent-fee basis to recover unpaid pension benefits, but Gates did not sign a fee agreement. Williams ultimately received 40 percent of Gates's net recovery, plus $10,000 for "litigation expenses," for a total of $36,323.31. The pension matter, however, involved no litigation and little legal work by Williams—four letters to her client, seven letters to the employer, and a one-page affidavit.

{¶ 17} The parties stipulated, the board found, and we agree that Williams's conduct violated Prof.Cond.R. 1.5(a), 1.5(c) (requiring an attorney to have set forth a contingent-fee agreement in a writing signed by the client), 8.4(c),

and 8.4(h). We reject the board's finding that Williams also violated Prof.Cond.R. 1.15. Williams was not charged with violating that rule, and relator did not present evidence to support it.

### 6. Remaining charges

{¶ 18} Relator's third amended complaint included three more counts of misconduct. Relator requested dismissal of counts six and seven, and the panel unanimously dismissed those counts pursuant to Gov.Bar R. V(6)(G). The panel determined, and the board agreed, that the misconduct alleged in count eight—Williams's felony convictions—was subsumed in the conclusions of law relative to counts one through four and therefore count eight required no further findings. We agree with the board's recommendation as to these counts, and any remaining charges in relator's complaint not addressed here are dismissed.

### Sanction

{¶ 19} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. We have already identified Williams's egregious ethical violations and the resulting injuries that she caused to her clients. Consideration of the remaining factors—and especially our precedent—convinces us that disbarment is the appropriate sanction.

### 1. Aggravating factors

{¶ 20} The board determined that six of the nine aggravating factors listed in BCGD Proc.Reg. 10(B) are present here: dishonest or selfish motive, a pattern of misconduct, multiple offenses, failure to cooperate in the disciplinary process, vulnerability of and resulting harm to victims of the misconduct, and failure to

make restitution. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (h), and (i). In its objections, relator asserts that Williams also engaged in deceptive practices during the disciplinary process. *See* BCGD Proc.Reg. 10(B)(1)(f). We concur. At Williams's March 2012 deposition, she testified that she had not gambled since 2011. However, Williams's bank records show that she gambled at casinos in West Virginia and Pennsylvania on numerous dates in January and February 2012—even three days after pleading guilty to felony charges. Accordingly, seven of the nine aggravating factors listed in BCGD Proc.Reg. (10)(B)(1) are present here.

*2. Mitigating factors*

{¶ 21} The board found four mitigating factors: the absence of a prior disciplinary record, good character or reputation, imposition of other penalties, and Williams's acknowledgment of the wrongfulness of her actions. *See* BCGD Proc.Reg. 10(B)(2)(a), (e), and (f). The panel, with whom the board agreed, was particularly persuaded by Williams's character evidence, noting that she had presented eight witnesses who attested to her moral character, commitment to being an attorney, work ethic, and involvement in her church and community. Indeed, the panel found that "[w]ere it not for the witnesses * * *, the Panel would have no hesitation recommending disbarment."

{¶ 22} Before the panel, Williams requested that her mental disorders also be considered as a mitigating circumstance. In support, Williams presented deposition testimony from three professionals: her addictions counselor, her therapist, and her psychiatrist. Each witness testified that Williams suffers from some mental disorder, described variously as major depression, gambling addiction, and impulse-control disorder. All three concluded that Williams's mental disorders contributed to her professional misconduct and that after successful treatment Williams could return to the ethical, competent, and professional practice of law. In addition, Williams presented the testimony of the

clinical director of the Ohio Lawyers Assistance Program ("OLAP"), who had diagnosed Williams as suffering from pathologic gambling, major depression, and generalized anxiety disorder and who verified that in August 2011 Williams had entered into a four-year OLAP contract.

**{¶ 23}** The panel, however, appropriately determined that none of Williams's mental disorders qualify as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g), which requires completion of a "sustained period of successful treatment." BCGD Proc.Reg. 10(B)(2)(g)(iii). Even after Williams commenced treatment for her addiction and other mental disorders, she continued to gamble and was not open and honest with her treating professionals about that gambling. In fact, Williams left the state to gamble a week before the panel hearing, which violated her community-control sanctions and resulted in her incarceration. In the end, Williams plainly failed to sustain any period of successful treatment, and therefore her mental disorders cannot be considered as a mitigating factor under the board's regulations.

*3. Applicable precedent*

**{¶ 24}** "We have consistently recognized that the presumptive disciplinary sanction for misappropriation of client funds is disbarment." *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040, ¶ 39; *see also Disciplinary Counsel v. Wickerham*, 132 Ohio St.3d 205, 2012-Ohio-2580, 970 N.E.2d 932, ¶ 16 ("The presumptive disciplinary sanction for a pattern of misconduct involving dishonesty, misappropriation, and lack of cooperation in disciplinary proceedings is disbarment"). In addition, disbarment is "an appropriate sanction when an attorney is convicted of theft offenses." *Disciplinary Counsel v. Brickley*, 131 Ohio St.3d 228, 2012-Ohio-872, 963 N.E.2d 818, ¶ 7.

**{¶ 25}** The presumption in favor of disbarment, however, may be rebutted by mitigating circumstances. *Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53,

2011-Ohio-2672, 950 N.E.2d 171, ¶ 20. For example, when an attorney's misconduct is motivated by addiction, and we believe that the attorney is committed to recovery or no longer poses a threat to the public, we have tailored the sanction to assist the attorney's recovery. *Id.* at ¶ 21-22 (tempering sanction when attorney successfully completed treatment for addiction, complied with all terms of OLAP contract, and maintained sobriety for over a year at the time of the panel hearing).

{¶ 26} To rebut the presumption, the board's report cites several cases, but we do not find any of them relevant to the facts here. For example, the board relies on *Columbus Bar Assn. v. Larkin*, 128 Ohio St.3d 368, 2011-Ohio-762, 944 N.E.2d 669, for the proposition that we should temper Williams's sanction because of her addiction and mental disorders, even though they do not qualify as a mitigating factor under the board's regulations. *Larkin*, however, was not a misappropriation case, and Larkin's misconduct did not harm any of his clients. The board also relies on *Columbus Bar Assn. v. Thomas*, 124 Ohio St.3d 498, 2010-Ohio-604, 924 N.E.2d 352, in which we indefinitely suspended an attorney who misappropriated a client's money and was financially unable to make restitution. But unlike Williams—who misappropriated over $170,000 from several clients (including an undetermined amount of what may have been earned fees)—the attorney in *Thomas* misappropriated $32,600 from one client, and there was no evidence that the attorney's misconduct was caused by any unresolved addiction or mental disorder.

{¶ 27} In her answer brief, Williams similarly relies on cases with significant differences from the facts here. *See, e.g., Toledo Bar Assn. v. Crossmock*, 111 Ohio St.3d 278, 2006-Ohio-5706, 855 N.E.2d 1215 (indefinite suspension for an attorney who misappropriated $300,000 of law-firm funds; but that attorney made restitution, did not harm or misappropriate money from any client, and sought and received treatment for his mental disorder). In contrast,

Williams stole from her clients, has not made restitution, and has not demonstrated any probability of recovery from the addiction or disorder that caused her misconduct—even when her law license was at stake.

{¶ 28} Finally, neither the board nor Williams has cited any precedent justifying the board's heavy reliance on the character testimony of Williams's friends, who "convinced the [panel and board] that she is worthy of another chance." While we agree that Williams's character evidence was substantial, we do not find that her friends' opinions of her outweigh Williams's misconduct or our well-settled precedent.

**Conclusion**

{¶ 29} " 'The continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases.' " *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 17, quoting *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998). For this reason, disbarment is the "starting point for determining the required sanction." *Id.* Contrary to the board's recommendation, none of the mitigating factors here warrant straying from this starting point. Specifically, on this record, we cannot conclude that Williams is committed to recovery or that she no longer poses a threat to the public.

{¶ 30} Accordingly, having reviewed Williams's ethical violations, the significant harm she caused to her clients, the profusion of aggravating factors, the mitigating factors, and the sanctions imposed for comparable conduct, we sustain relator's objection and permanently disbar Williams from the practice of law in Ohio. Costs are taxed to Williams.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

———————————

Milligan Pusateri Co., L.P.A., and Richard S. Milligan; and Dimitrios S. Pousoulides, for relator.

Agatha Martin Williams, pro se.

_____