DISCIPLINARY COUNSEL *v.* ANTHONY.

[Cite as *Disciplinary Counsel v. Anthony,* 138 Ohio St.3d 129,

2013-Ohio-5502.]

*Attorney misconduct—Theft conviction—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Indefinite suspension.*

(No. 2013-0226—Submitted April 10, 2013—Decided December 24, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-086.

_____

SYLLABUS OF THE COURT

An attorney's suspension for failure to comply with attorney-registration requirements is prior discipline and therefore is an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(a).

_____

**Per Curiam**.

{¶ 1} Respondent, Mark Allan Anthony of Dayton, Ohio, Attorney Registration No. 0056048, was admitted to the practice of law in Ohio in 1991. In 2005, we suspended Anthony's license for failing to register, and in 2009, we suspended him again for failing to comply with continuing-legal-education requirements. In 2011, we imposed an interim felony suspension based on his theft conviction for embezzling money from his employer, St. Francis de Sales Catholic Church, in Lebanon, Ohio. *In re Anthony*, 128 Ohio St.3d 1490, 2011-Ohio-2221, 946 N.E.2d 760. All of these suspensions remain in effect.

{¶ 2} Based on Anthony's felony conviction, relator, disciplinary counsel, charged him with violations of the Code of Professional Responsibility and the Rules of Professional Conduct. A three-member panel of the Board of

Commissioners on Grievances and Discipline conducted a hearing, in which the parties submitted stipulated facts and misconduct and jointly recommended a sanction of an indefinite suspension. The parties, however, could not agree on whether restitution should be a condition of Anthony's possible reinstatement to the practice of law. The panel accepted the parties' stipulated facts and misconduct and recommended that Anthony be indefinitely suspended and that reinstatement be conditioned on the successful completion of a treatment plan for Anthony's gambling addiction and *the establishment of a plan to pay* restitution. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and neither party has objected to the board's report.

{¶ 3}   Upon review of the record, we accept the board's findings of fact and misconduct and impose an indefinite suspension subject to payment of restitution as a condition of reinstatement.

### Misconduct

{¶ 4}   In 2004, Anthony voluntarily ceased the active practice of law and focused on his employment as the business manager at St. Francis de Sales Catholic Church. Over a period of almost four years, Anthony embezzled church funds to pay for personal expenses and to maintain a gambling addiction. Specifically, Anthony wrote at least 60 checks to himself or to cash from parish funds, withdrew cash from various church accounts, and improperly used the parish credit card more than 60 times. In February 2007, Anthony pled guilty to grand theft, and the Warren County Court of Common Pleas sentenced him to a 12-month prison term and ordered him to pay restitution to St. Francis. After Anthony had served four months in prison, the court modified his sentence to five years of community control.

{¶ 5}   The record here does not clearly set forth how much money Anthony took from St. Francis. The parties stipulated, and the board found, that Anthony "misappropriated approximately $118,000 in parish funds," and the trial

court ordered that he pay $118,891 in restitution. However, the parties also stipulated that Gallagher Bassett Services, Inc., a firm hired by the Archdiocese of Cincinnati to administer its insurance claims, calculated St. Francis's total loss at $127,649.15. When a panel member asked about this discrepancy at the hearing, Anthony stated that he had "no idea how they came to their numbers," and relator explained that the prosecutor used the $118,891 figure, but the archdiocese and St. Francis concluded that the total loss was more than that amount based on the Gallagher Bassett findings.

**{¶ 6}** We agree with the board's conclusion that Anthony violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).[1]

### Anthony's criminal restitution order

**{¶ 7}** At the time of Anthony's thefts, the Archdiocese of Cincinnati maintained an employee-dishonesty insurance policy with Lloyd's of London. The terms of that policy specified that the archdiocese was responsible for the first $100,000 of any employee-dishonesty claim, and the insurer was obligated for losses over that amount. The archdiocese created a self-insured retention ("SIR") fund and required its parishes and other entities to pay a predetermined

---

1. In its report, the panel stated its intention to dismiss the alleged violation in count two of relator's complaint. Gov.Bar R. V(6)(G), which permits a unanimous panel of the board to order the dismissal of a count without referring it to the board or this court for review, requires the panel to provide notice to counsel of record and other interested parties. The record in this case does not establish that the panel complied with the notice requirements of that rule. Instead, the panel certified its findings of fact and recommendations to the board in accordance with Gov.Bar R. V(6)(H) and (I). Because the panel did not order dismissal and provide the notices required by Gov.Bar R. V(6)(G), we treat the purported dismissal as a recommendation that count two be dismissed. *See, e.g.*, *In re Complaint Against Harper*, 77 Ohio St.3d 211, 216, 673 N.E.2d 1253 (1996); *Disciplinary Counsel v. Doellman*, 127 Ohio St.3d 411, 2010-Ohio-5990, 940 N.E.2d 928, ¶ 31-33. We accept that recommendation and dismiss count two.

amount to cover any claimed losses under the policy. In 2007, the SIR fund of the archdiocese issued payment of $100,000 to St. Francis, and in 2008, Lloyd's of London issued its check for $27,149.15 to St. Francis, representing the remainder of the claimed loss less a $500 deductible.

{¶ 8} In 2011, upon learning that St. Francis had been made whole, Anthony moved the trial court to modify its restitution order, arguing that Ohio law prohibited restitution to a victim in an amount in excess of the victim's actual economic loss. The trial court agreed and terminated Anthony's community-control supervision. Up to that time, Anthony had paid $13,425 in restitution— $10,000 to St. Francis and $3,425 to Lloyd's of London. Since then, Anthony has not paid any restitution.

### Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider several factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. In this case, relator, the panel, and the board have recommended an indefinite suspension; upon consideration of the relevant factors, we adopt that recommendation, but condition reinstatement on payment of the loss and impose other conditions.

*1. Aggravating and mitigating factors*

{¶ 10} The board determined that Anthony's prior attorney-registration suspension was an aggravating factor, but it also considered as a mitigating factor the fact that Anthony had no prior discipline except for that suspension. We have not always been consistent in treating attorney-registration suspensions as aggravating factors. *Compare Cleveland Metro. Bar Assn. v. Kelly*, 132 Ohio

St.3d 292, 2012-Ohio-2715, 971 N.E.2d 922, ¶ 15 ("The only mitigating factor is that, except for his current attorney-registration suspension, [respondent] does not have a prior disciplinary record") *with Disciplinary Counsel v. Lape*, 130 Ohio St.3d 273, 2011-Ohio-5757, 957 N.E.2d 772, ¶ 11 (citing cases holding that an attorney-registration suspension is an aggravating factor).

**{¶ 11}** An attorney's suspension for failure to comply with attorney-registration requirements is prior discipline and therefore is an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(a). A registration suspension may not weigh heavily against a respondent when the prior discipline consists only of a registration suspension. In this case, although respondent has also been sanctioned for failure to comply with continuing-legal-education ("CLE") requirements, pursuant to Gov.Bar R. X(5)(C), a sanction imposed for CLE noncompliance "shall not be considered in the imposition of a sanction under Gov.Bar R. V, Section 8."

**{¶ 12}** In addition, other aggravating factors exist in this case: (1) dishonest or selfish motive, (2) pattern of misconduct, (3) multiple offenses, (4) harm to the victims of the misconduct, and (5) failure to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (h), and (i). However, we reject the board's conclusion that Anthony submitted false evidence during the disciplinary process, because the board fails to identify the false evidence and the record does not support the board's conclusion.

**{¶ 13}** In mitigation, the board found that Anthony disclosed his conduct to the disciplinary board, cooperated in the disciplinary investigation, and had already been punished for his conduct by serving a prison sentence. *See* BCGD Proc.Reg. 10(B)(2)(d) and (f). At the hearing, relator argued that Anthony's gambling addiction could not be considered as a mitigating factor because Anthony had not yet demonstrated a sustained period of successful treatment, as required by BCGD Proc.Reg. 10(B)(2)(g)(iii). Anthony signed a contract with the

Ohio Lawyers Assistance Program ("OLAP") only three months before the panel hearing and therefore did not establish that his addiction qualified as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g)(iii), which requires a sustained period of successful treatment. We nonetheless agree with the board that Anthony's diagnosed pathological gambling disorder, his OLAP contract, his commencement of treatment with a clinical psychologist, and his involvement in Gamblers Anonymous should be accorded some mitigating effect.

## 2. Applicable precedent

**{¶ 14}** To support its recommended sanction, relator cited three cases in which we indefinitely suspended attorneys for misappropriating large amounts of non-client funds, namely, *Disciplinary Counsel v. Muntean*, 127 Ohio St.3d 427, 2010-Ohio-6133, 940 N.E.2d 942 (attorney indefinitely suspended for misappropriating nearly $50,000 from a county board while serving as the treasurer), *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798 (attorney indefinitely suspended for embezzling over $40,000 from a county humane society while serving as its volunteer treasurer), and *Akron Bar Assn. v. Smithern*, 125 Ohio St.3d 72, 2010-Ohio-652, 926 N.E.2d 274 (attorney indefinitely suspended for stealing over $100,000 from her employer law firm).

**{¶ 15}** In these cases, we were influenced by the relevant mitigating factors—including restitution. In *Muntean*, we noted that the attorney had made complete restitution as a condition of his criminal sentence. *Id.* at ¶ 5, 12. In *Kelly*, we conditioned the attorney's reinstatement on full restitution. *Id*. at ¶ 20. And in *Smithern*, we conditioned the attorney's reinstatement on compliance with a settlement agreement between the attorney and the law firm's insurer requiring the attorney to make full restitution to the insurer. *Id*. at ¶ 10, 16.

**{¶ 16}** In addition, our recent opinion in *Stark Cty. Bar Assn. v. Williams*, 137 Ohio St.3d 112, 2013-Ohio-4006, 998 N.E.2d 427, while not controlling, is useful in determining the appropriate sanction. In *Williams*, we permanently

disbarred an attorney who, like Anthony, had committed theft offenses for stealing substantial amounts of money in order to maintain a gambling addiction and who, like Anthony, had failed to make restitution to her victims. However, Williams showed little probability of recovery, and she continued gambling during the pendency of her disciplinary proceedings, which violated the terms of her community control and resulted in her serving the eight-and-a-half-year prison sentence. *Id.* at ¶ 1, 23, 27. In contrast, the trial court in Anthony's criminal case successfully terminated him from community control in 2011. Moreover, Anthony maintains that he has not gambled since 2007, and he has demonstrated that he has been involved with Gamblers Anonymous since 2006. Thus, this case is factually distinguishable from *Williams*.

*3. Conclusion*

{¶ 17} Anthony violated a private trust with his employer and caused great harm to St. Francis de Sales Catholic Church. In addition, he has been sanctioned for failing to register and failing to comply with CLE requirements, and all of those sanctions remain in effect. We recognize that he also has served a prison sentence, has been actively involved in Gamblers Anonymous, recently signed a contract with OLAP, fully cooperated during the disciplinary process, and has exhibited remorse. But he has paid only $13,425 in restitution, and the SIR fund is owed $90,000 and the insurer is owed almost $24,000. On this record, the board recommends that we indefinitely suspend Anthony and place conditions on any potential reinstatement.

{¶ 18} Having reviewed Anthony's ethical violations and the aggravating and mitigating factors, and having considered the sanctions imposed for comparable misconduct, we accept the board's recommended sanction. However, we modify its recommended conditions for reinstatement. As a condition of reinstatement in this case, Anthony is ordered to make restitution of $127,649.15, consisting of $100,000 to the SIR fund, $27,149.15 to Lloyd's of London, and the

$500 deductible payable to St. Francis de Sales Catholic Church, less amounts he has paid to date.

{¶ 19} Accordingly, Mark Allen Anthony is hereby indefinitely suspended from the practice of law in Ohio. To petition for reinstatement, Anthony must show (1) successful completion of an OLAP-approved treatment plan for gambling addiction and (2) the payment of restitution in the amount of $127,649.15. Costs are taxed to Anthony.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting**.

{¶ 20} I respectfully dissent and would hold that Anthony should be permanently disbarred, to be consistent with our recent disbarment of the attorney in *Stark Cty. Bar Assn. v. Williams*, 137 Ohio St.3d 112, 2013-Ohio-4006, 998 N.E.2d 427.

{¶ 21} The majority suggests that this case is "factually distinguishable," majority opinion at ¶ 16, from a disciplinary case in which a woman was disbarred even though she claimed that she had an uncontrollable gambling problem and presented the testimony of three professionals who opined that she could successfully return to the practice of law after treatment. The majority emphasizes that Williams had violated terms of her community control by continuing to gamble, apparently taking as fact Anthony's claim that he has not gambled since 2007. And while it is true that Anthony's period of community control was terminated, this termination occurred because he convinced the court that he should not be ordered to pay restitution covered through the church's insurance.

8

**{¶ 22}** *Williams* is instructive rather than distinguishable, setting forth the appropriate standard for discipline in these cases:

"We have consistently recognized that the presumptive disciplinary sanction for misappropriation of client funds is disbarment." *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040, ¶ 39; *see also Disciplinary Counsel v. Wickerham*, 132 Ohio St.3d 205, 2012-Ohio-2580, 970 N.E.2d 932, ¶ 16 ("The presumptive disciplinary sanction for a pattern of misconduct involving dishonesty, misappropriation, and lack of cooperation in disciplinary proceedings is disbarment"). In addition, disbarment is "an appropriate sanction when an attorney is convicted of theft offenses." *Disciplinary Counsel v. Brickley*, 131 Ohio St.3d 228, 2012-Ohio-872, 963 N.E.2d 818, ¶ 7.

*Id*. at ¶ 24.

**{¶ 23}** The board had found four mitigating factors in *Williams*: the absence of a prior disciplinary record, good character or reputation, imposition of other penalties, and Williams's acknowledgment of the wrongfulness of her actions. But we unanimously rejected the board's recommendation of indefinite suspension, stating:

" 'The continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases.' " *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 17, quoting *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897

(1998).  For this reason, disbarment is the "starting point for determining the required sanction." *Id*.  Contrary to the board's recommendation, none of the mitigating factors here warrant straying from this starting point.

*Id.* at ¶ 29.

**{¶ 24}**    Thus, we made a strong statement in *Williams*, and we explained to attorneys and the public at large what requires the "strictest discipline."  This is not a case in which to back away from that pronouncement.  For over four years, Anthony embezzled more than $100,000 from the church at which he was employed.  I do not believe that the mitigating factors warrant a departure from the sanction of disbarment.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

James T. Ambrose, for respondent.

_____